THOMAS MACK v. HUGGER BROS. CONSTRUCTION COMPANY.

Middle Section.   July 20, 1929.

Petition for Certiorari denied by Supreme Court, January 18, 1930.

Stokes & Stokes, of Nashville, for appellant.

404

Clarence T. Boyd and Thomas G. Watkins, of Nashville, for appellee.

FAW, P. J. Thomas Mack, the complainant below, has appealed to this court from a decree of the chancery court of Davidson county, Part 1, and the case has been heard on the record, assignments of error and briefs on behalf of both parties, and oral argument of counsel at the bar.

The complainant is engaged, under the trade name of Rezilite Mfg. Co., in manufacturing and applying rezilite, a "compound used as a dressing on floors." The residence and principal place of business of complainant is in the State of Illinois.

The defendant Hugger Bros. Construction Company, a corporation, is a building contractor, with its corporate domicile in the State of Alabama, but domesticated in Tennessee.

The original bill in this case was filed by complainant on January 29, 1925, against Hugger Bros. Construction Company, and the Trustees of the Scottish Rite Bodies of the Valley of Nashville, Orient of Tennessee, a Tennessee corporation, seeking a judgment against Hugger Bros. Construction Company for $6350, with interest thereon from the filing of the bill, alleged to be due complainant for the "dressing of the floors" in the Scottish Rite Temple at Nashville, Tennessee, under a contract with defendant Hugger Bros. Construction Company.

Complainant also sought to have a lien declared and enforced upon the Scottish Rite Temple, and, pursuant to a further prayer of the bill, the sum of $12,000 due defendant Hugger Bros. Construction Company from the trustees of the Scottish Rite Bodies etc., was impounded by attachment and injunction; but, on February 4, 1925, defendant Hugger Bros. Construction Company executed and deposited with the Clerk and Master of the chancery court in which the suit was pending a replevy bond, with surety, in the sum of $12,000, and thereupon the court dismissed the attachment and dissolved the injunction, and also dismissed the complainant's bill as against the trustees of the Scottish Rite Bodies etc., to which action of the court there was no exception. Therefore, whenever the defendant is mentioned hereinafter, the reference is to Hugger Bros. Construction Company.

Complainant also alleged in his bill that defendant is indebted to him in the further sum of $1793 for material and work furnished defendant as a contractor for the erection of a building at Greenville, Alabama, which sum, complainant alleged, is long since past due, owing and unpaid, and complainant prayed for judgment therefor, with interest thereon from November 8, 1924.

Defendant answered the bill and substantially admitted both of the contracts with complainant as stated in the bill, and the performance of same by complainant; but the defendant filed its answer as a cross-bill and sought to recover of complainant the sum of $7948.16 by way of recoupment for damages suffered by defendant in the destruction by fire of the aforesaid building at Greenville, Alabama, which fire, it was alleged, had been caused by the negligence of complainant's agent or representative while performing the contract on the Greenville building.

Defendant admitted, in its answer, that it owed complainant the sum of $194.84 (this being the difference between the aggregate of the two sums for which complainant sued in his bill and the sum which defendant, by its cross-bill, was seeking to recoup from complainant), and defendant alleged that it had tendered this sum ($194.84) to complainant, but that complainant had refused to receive same. Defendant paid the sum of $194.84 into court, along with its answer and cross-bill, as a continuing tender thereof to complainant.

Complainant Mack, as cross-defendant, demurred to defendant's cross-bill, but the Chancellor overruled the demurrer, and from his ruling on the demurrer he granted an appeal to the Supreme Court prayed by complainant Mack. The Supreme Court, in its opinion reported in 153 Tenn., pp. 260-267, affirmed the decree of the Chancellor overruling the demurrer, and remanded the cause to the chancery court, where cross-defendant Mack filed an answer to the cross-bill on July 10, 1926, in which answer he denied the material averments of the cross-bill on which the defendant and cross-complainant sought to recover damages on account of the destruction by fire of the Greenville, Alabama, building.

Proof was taken on behalf of the parties, respectively, and the cause was finally heard by the Chancellor and a decree entered (on December 5, 1928), as follows:

"This cause came on finally to be heard this December 5, 1928, and former days of the term, before Honorable R. B. C. Howell, Chancellor of Part One of the chancery court of Davidson county, Tennessee, upon all the pleadings herein, stipulation of counsel, all of the evidence, and argument of counsel, from all of which it appeared to the satisfaction of the court:

"That the defendant and cross-complainant Hugger Bros. Construction Company is indebted to the complainant Thomas Mack in the sum of $8143 for and on account of the laying or construction by the complainant of rezilite floors in the Beeland Bros. Building, at Greenville, Alabama, and in the Scottish Rite Temple, at Nashville, Tennessee; and

"It further appearing to the satisfaction of the court, and the court finds as a fact that the complainant and cross-defendant Thomas Mack had contracted to lay or construct a rezilite floor in the said Beeland Bros. Building at Greenville, Alabama, and that while the said rezilite floor was being laid by the agent and representative of complainant and cross-defendant Thomas Mack, the said agent and representative, Frank Gengenback, did carelessly and negligently throw a flaming match upon the said rezilite floor, well knowing the highly inflammable character of some of the materials thereon, and while the same was being laid or constructed by him as such agent and representative of the said Thomas Mack, thereby setting fire to said floor and building, and practically destroying and burning the same while the said building was in the course of construction and near completion; and

"It further appearing to the satisfaction of the court, and the court finds as a fact that by reason of said partial burning or destruction of the said building, as aforesaid, the defendant and cross-complainant Hugger Bros. Construction Co., suffered and sustained a loss in the sum of $7948.16, that being the amount necessarily expended by said Hugger Bros. Construction Co., in the re-construction and repair of said building, and that the said complainant and cross-defendant Thomas Mack is indebted to the defendant and cross-complainant Hugger Bros Construction Co., in the said sum of $7948.16; and

"It further appearing that the answer of the complainant and cross-defendant to the cross-bill filed herein sets up the legal defense that the act of the alleged servant of cross-defendant was not done in the scope of his employment, but was a tortious and wilful act for which the said cross-defendant is not liable, and that this defense is contained in the demurrer heretofore filed herein, and has been disposed of by this court in overruling the said demurrer, and the court's action thereon affirmed by the appellate court; and

"It further appearing to the satisfaction of the court that the defendant and cross-complainant Hugger Bros. Construction Co., has heretofore, with the filing of the answer and cross-bill herein, paid into the registry of this court, the sum of $194.84, that being the amount of the difference between the two amounts hereinabove fixed, which sum cross-complainant tendered to the cross-defendant, it is therefore ordered, adjudged and decreed by the court that complainant and cross-defendant Thomas Mack have and recover of the defendant and cross-complainant Hugger Bros. Construction Co. the sum

of $8143, and that the defendant and cross-complainant Hugger Bros. Construction Company have and recover of the complainant and cross-defendant Thomas Mack the sum of $7948.16.

"Thereupon defendant and cross-complainant Hugger Bros. Construction Co., offered and filed a written motion requesting that its recovery herein allowed and ordered against the complainant and cross-defendant Thomas Mack, in the said sum of $7948.16, be set off against the recovery herein allowed and ordered against defendant and in favor of complainant and cross-defendant Thomas Mack, in the sum of $8143, which motion the court was pleased to grant.

"It is therefore ordered, adjudged and decreed by the court that the recovery herein decreed in the sum of $7948.16 in favor of the defendant and cross-complainant against the complainant and cross-defendant be and the same is set off against the recovery herein ordered and allowed in the sum of $8143 in favor of complainant and cross-defendant Thomas Mack and against the defendant and cross-complainant Hugger Bros. Construction Company.

"It is further ordered, adjudged and decreed by the court that the complainant and cross-defendant Thomas Mack and the defendant and cross-complainant Hugger Bros. Construction Co., each pay one-half of the unpaid costs of this cause.

"It is further ordered by the court that the Clerk and Master of this court, after retaining so much as may be necessary to pay the part of the costs adjudged against the said Thomas Mack out of said amount of $194.84 now in his hands herein, pay the remainder thereof to the said complainant and cross-defendant Thomas Mack, or to his solicitors of record, Stokes & Stokes, in this cause, and that execution issue for the one-half of the costs adjudged against the defendant and cross-complainant Hugger Bros. Construction Company.

"And it further appearing to the court that after the announcement of the decision by the court in this cause, the solicitors for the complainant and cross-defendant, Stokes & Stokes, filed a written motion herein asking that they be granted a lien for their services herein rendered the said Thomas Mack under the original bill filed herein upon the recovery of Thomas Mack against Hugger Bros. Construction Company, which lien should be prior to the right of the defendant and cross-complainant to set off its recovery against said judgment, which motion is by the court disallowed.

"It is further ordered by the court that Stokes & Stokes, solicitors for complainant and cross-defendant Thomas Mack,

upon their motion, be and they are hereby granted a lien upon the net recovery of the complainant herein for their services as such solicitors.

"It is further ordered by the court that the motion of the defendant and cross-complainant Hugger Bros. Construction Company made after the announcement of its decision herein by the court, to be allowed to amend its cross-bill herein and pray for interest, is allowed, the court being of the opinion, however, that no interest should be allowed on either of the claims set up in the pleadings in this cause, and its motion to be permitted to withdraw its former motion herein that its recovery be set off against the recovery of complainant made at the same time is disallowed.

"To the foregoing decree, complainant and cross-defendant Thomas Mack, excepts and prays an appeal to the next term of the Court of Appeals at Nashville, which is granted on his giving bond and security.

"By agreement of parties the court is pleased to order that in making out a transcript of the record of this cause for the appellate court, the Clerk and Master will include therein all the original exhibits, and not make any copies thereof.

"To so much of said decree as denies to defendant and cross-complainant, Hugger Bros. Construction Company, its motion to withdraw its motion that the recovery allowed it be set off against the recovery allowed against it, the defendant and cross-complainant, Hugger Bros. Construction Company, excepts, and to so much of said decree as renders a judgment against it in the sum of $8143, instead of rendering against it a judgment for the net amount, to-wit, $194.84, the amount by it tendered into court, the defendant and cross-complainant, Hugger Bros. Construction Company, excepts, and to so much of said decree as denies to it interest upon the amount due it, to-wit, $7948.16, from the filing of the answer and cross-bill herein, the defendant and cross-complainant, Hugger Bros. Construction Company excepts, and from so much of said decree as is specially excepted to herein, the defendant and cross-complainant, Hugger Bros. Construction Company, prays that its limited appeal to the present term of the Court of Apeals, Middle Section, sitting at Nashville, Tennessee, and which prayer for said limited appeal is granted, upon defendant and cross-complainant, Hugger Bros. Construction Company, executing an appeal bond, with surety conditioned as required by law, and thirty days is allowed it within which to execute said bond and otherwise perfect its said limited appeal."

Complainant Mack perfected his appeal and has assigned errors in this court. Defendant Hugger Bros. Construction Company did not perfect its appeal, but has assigned errors here upon the theory that, as complainant Mack prayed and perfected a "broad appeal," the entire case is in this court for consideration and the appellee may assign errors upon rulings of the Chancellor adverse to it.

1. The answer of defendant, filed as a cross-bill, contains averments as follows:

"Pursuant to his contract for the installation of said rezilite flooring in the Beeland Bros. Mercantile Company building, at Greenville, Ala., complainant sent his mechanic, agent, or representative, Mr. Gengenback to Greenville, Ala., with a helper, began the laying or installation of the rezilite flooring in said building. Rezilite, as your respondent is advised, is a compound dressing for floors in buildings which hardens in a few hours after applying same to floors as a top dressing; but, in applying same to floors, there is used what is known in the trade as a 'vehicle' or 'thinner' which is extremely inflammable, with an open flame such as a burning match. That on September 18, 1924, and during the progress of the work in applying said rezilite floor dressing, and especially the 'vehicle' or 'thinner' by the said Gengenback for and on behalf of the complainant in said Beeland Bros. Mercantile Company Building at Greenville, Ala., the said Gengenback while so employed and engaged struck a match to light his pipe and while said match was in a flame threw it on the floor, or near and by said floor where he was then so working. That immediately the entire floor spread into flames, which flames spread over the entire building, setting said building then in course of construction by your respondent, on fire, which fire caused almost the loss of the entire building itself, and your respondent was forced to replace or rebuild same in all its parts at a very great loss or damage.

"Your respondent therefore avers and charges that the said Gengenback, as the mechanic, agent or representative of complainant, negligently, carelessly and wrongfully set said Beeland Bros. Mercantile Company Building then in course of construction on fire by means of a burning match being thrown on the floor in said building when laying said floor with the rezilite covering, including the 'vehicle' or 'thinner,' that he was so employed by complainant and at the time was actually engaged in the performance of the work was knowingly permitted by complainant while so engaged in the work to smoke his pipe and light same with a burning match or by the exercise of reasonable care, caution and prudence could have

known of the same and prevented such acts on the part of its said mechanic, agent, or representative, and that on account of said negligence and carelessness on the part of complainant, your respondent has been damaged, or suffered a loss, by reason of the same to the extent or in the sum of $7,948.16 all resulting from said fire so caused by complainant in the destruction or partial destruction of said Beeland Bros. Mercantile Company Building at Greenville, Alabama, and which fire necessitated a rebuilding of same, or the parts thereof so damaged.''

The answer of cross-defendant Mack to the foregoing averments of the cross-bill is as follows:

"It is true that this respondent in the installation of a rezilite floor in the building of the Beeland Bros. Mercantile Company, Greenville, Ala., sent Mr. Gengenback to Greenville to do said work. It is true that rezilite is the name of a compound dressing and that it hardens in a very short time and becomes fire proof. That a very short time after it is placed on the floor, there is contained in the compound an ingredient that volatilizes and throws off a gas that is inflammable when coming in contact with an open flame.

"It is true, as this respondent is informed, that said building wherein respondent's representative was laying said floor caught on fire and the building was very seriously damaged.

"This respondent in answer to the direct charges contained in said bill says:

"It is not true that the said Gengenback, while so employed and engaged, struck a match to light his pipe and while said match was in a flame, threw it on the floor, or near and by said floor where he was then working. It is denied that the said Gengenback lit any match at the time and under circumstances aforesaid, nor did he throw it on the floor, nor did any fire result therefrom as alleged in cross-complainant's cross-bill.

"It is denied that the said Gengenback as the mechanic, agent or representative of this respondent negligently, carelessly and wrongfully set said Beeland Bros. Building, then in course of construction, on fire by means of a burning match thrown on the floor of said building when laying said floor with the rezilite covering, including the 'vehicle.'

"It is not true that this respondent knowingly permitted said Gengenback, while so employed by him and when he was engaged in the performance of the work of putting on this dressing, to smoke his pipe and light same with a burning match. It is likewise denied that this respondent by the exercise of

reasonable care, caution and prudence could have known of the said alleged act of the said Gengenback.''

As we have seen, the Chancellor found ''as a fact'' that ''while said rezilite floor was being laid by the agent and representative of complainant and cross-defendant Thomas Mack, the said agent and representative, Frank Gengenback, did carelessly and negligently throw a flaming match upon the said rezilite floor, while knowing the highly inflammable character of some of the materials thereon, and while the same was being laid or constructed by him as such agent and representative of the said Thomas Mack, thereby setting fire to said floor and building and practically destroying and burning the same while the said building was in the course of construction and near completion.''

There is no assignment of error which, in express terms, asserts that the finding of the Chancellor just quoted was erroneous, or that such finding was not supported by the preponderance or greater weight, of the evidence. The only assignment of error dealing with the evidence on this subject is the appellant's fourth assignment, which is as follows: ''We insist that the proof offered by defendant to the effect that the servant of complainant struck a match to light his pipe and threw the lighted match on the wet rezilite compound is unbelievable.''

However, as a case of this kind is triable de novo on appeal, (Shannon's Code, section 4887; Willis & Turner v. Moore & Daves, 151 Tenn., 562, 574, 271 S. W., 736; Pub. Acts of 1929, chapter 94), and unless the fire which destroyed the Greenville, Alabama, building was caused by the act of complainant's agent or servant, Gengenback, as alleged, defendant would be entitled to no relief under its cross-bill, we have examined all the evidence in the record, and we find that the preponderance of the evidence supports the finding of the Chancellor last above quoted.

Certainly there is nothing in the testimony of defendant's witnesses which is inherently incredible, in the sense that it is contrary to generally accepted natural laws, and, after reading the testimony mentioned in appellant's fourth assignment, supra, we think the term ''unbelievable'' must have been used in that assignment in the sense of improbable. We readily agree that it would seem improbable that Gengenback, while knowing, as he did, the inflammable nature of the ''thinner'' he was then engaged in applying to the floor, would have smoked while thus engaged, or (which is more improbable), that he would have thrown a lighted match on the floor to which the ''thinner'' had just been applied.

But, as said by Judge Cochran speaking for the United States Circuit Court of Appeals, ''an improbable fact properly verified is not to be rejected because of such improbability,'' (Buser v.

Novelty Tufting Machine Co., 151 Fed. R., 478, 491), or as said in a New Jersey case, "express testimony cannot be rejected on the sole ground of its improbability." Berckmans v. Berckmans, 16 N. J. Eq., 122, 127, quoted with approval in Coonrod v. Kelly, 113 Fed. R., 378, 381.

According to their testimony, three witnesses, viz: C. M. Cox, R. D. Stringer and J. M. O'Brien, saw Gengenback (while engaged in applying rezilite to the floor in question) light his pipe with a match and throw the match down on the floor, and saw the fire start immediately from the place where Gengenback threw the match.

The witness H. L. Soloman testified that he saw Gengenback smoking a pipe while applying rezilite to the floor during the forenoon of the same day on which the fire occurred, and also saw him with a pipe in his mouth about a half minute before he heard the cry of "fire," but the witness had turned his attention to his own work on the mezzanine floor above Gengenback and was not looking at Gengenback at the time the fire started.

The defendant's witnesses I. A. Pouncey, B. D. Jernigan and G. W. Johnson each testified that he saw Gengenback have a pipe in his mouth while at work on the floor in question during the day on which the fire occurred and shortly before the fire, but did not see him strike a match and throw it on the floor.

The above named seven witnesses for defendant, except Stringer, were carpenters or carpenter's "helpers" at work on a mezzanine floor they were finishing along the sides of a room in which Gengenback was working, or on a scaffold above Gengenback, and much of the time they had an unobstructed view of Gengenback when they looked in his direction.

The witness Stringer was a "helper" employed by Gengenback after he (Gengenback) arrived at Greenville, and Stringer stated in his testimony that he had just brought to Gengenback two buckets full of the material that Gengenback was using on the floor, and was standing within three feet of Gengenback when the latter "struck a match and lit his pipe and threw it down on the floor" and "it just flamed up suddenly;" that it "burned up in the twinkling of an eye."

Gengenback positively and unequivocally denied that he smoked at any time while in the building in question or that he threw a match on the floor, as will be seen from excerpts from his testimony which we here quote as follow:

"Q. Do you know how this fire started? A. No, sir.

"Q. On that day were you smoking? A. Yes, sir, but not in the building.

"Q. You do smoke, do you? A. Yes, sir.

"Q. And were you smoking while you were in the building? A. No, sir.

"Q. Do you ever smoke while you are at work laying this kind of material? A. No, sir.

"Q. Why don't you? A. For the simple reason that smoke seems to go back in your nostrils, and if I was working on cement I don't even smoke, and on this particular occasion I warned everybody else not to smoke, so why should I smoke and break my own rules.

"Q. Why do you warn others not to smoke or warn others not to smoke while you are laying this material? A. Because I sometimes use gasoline.

"Q. Why do you use gasoline? A. Because if the material is a little stiff we use gasoline to thin it up. ·

"Q. Is that gasoline or naphtha? A. I understand the material comes from the factory, the material is mixed with naphtha and sometimes in shipping a certain percentage of the liquid will be lost.

"Q. On this occasion while you were working on this Beeland Building at Greenville, Alabama, were you smoking a pipe? A. No, sir.

"Q. Did you have a pipe in your mouth? A. No, sir.

"Q. At any time that afternoon while you were working? A. No, sir.

"Q. Do you smoke a pipe while you are working? A. No, sir.

"Q. And is this material that you lay, or any part or portion of it, inflammable? A. Yes, sir.

"Q. And is that inflammable after it is laid, or while it is being laid? A. While it is being laid.

"Q. Do you know whether or not it is dangerous for a flame to come in contact with the material as it is being laid? A. Yes, sir.

"Q. And did anybody tell you that? A. Well, no one ever told me that. We have known it among all our tradesmen that lay it. In this respect, naturally any one tells you, you are going to find out yourself.

"Q. Did Mr. Mack ever talk to you about being careful of matches and flames? A. Yes, sir.

"Q. What did he say with reference to that? A. When I was first employed by Mr. Mack he said 'I suppose you know enough not to use matches or allow anyone else to use matches' and that was the last of it. . . .

"Q. Do you smoke a pipe when you work? A. No, sir.

"Q. Do you smoke a pipe? A. At home sometimes.

"Q. I mean, do you smoke a pipe outside of your home? A. No, not unless I would accidentally stick it in my pocket, but seldom. . . .

"Q. Did you have a helper on this job? A. Yes, sir.

"Q. Do you remember his name? A. I think it was Stringer, or something like that.

"Q. And you hired him down there? A. Yes, sir.

"Q. Did you at that time or place take a match, light your pipe with the match and then throw the match down beside you? A. No, sir.

"Q. Did you at any time do anything of that kind on this building? A. No, sir.

"Q. Did you ever light a match on this building where you were working that way? A. No, sir. . . .

"Q. Now, the first you knew of this fire was the sound of the hiss you heard and which subsequently consisted of a flame? A. A blue flame.

"Q. Coming right over your work towards you. Was that going over the work you had completed in the second section? A. Yes, sir.

"Q. How soon, Mr. Gengenback, was it after you saw this blue flame that you hollered fire? A. Just as quick as I could move or get up.

"Q. Immediately? A. Yes, sir.

"Q. And did you have time to get out of the building? A. Yes, all in the rear was clear.

"Q. You immediately ran out yourself after you hollered fire? A. Yes, sir.

"Q. Prior to this fire, how long had you smoked? How long had you been accustomed to smoking prior to the fire? A. Possibly a half an hour.

"Q. You had been smoking a long time both pipe and cigars? A. Mostly cigars.

"Q. How long had you the habit of smoking? A. About 14 years.

"Q. Do you remember whether you had your pipe with you or not at Beeland Brother's Building? A. I know I did not have my pipe.

"Q. How do you know? A. Because I was in a very warm climate and anything warm in my pockets would know. I had a package of chewing tobacco in my pocket and that was laying outside with my cigar.

"Q. How long before the fire were you smoking? A. Half an hour or so.

"Q. How much of a smoker are you? Do you smoke between times? A. It all depends what I am doing.

"Q. How many times do you smoke a day? A. If I am driving I smoke all the time. If I am working I won't smoke over four times because the position of my body in working doesn't allow it. It goes into the nostrils and it doesn't taste right.

"Q. This material you call rezilite is inflammable when subjected to a flame? A. When subjected to a flame, that is as it is being laid.

"Q. And if the flame is applied to this material as you are laying it, say with your trowel, it is what you would call inflammable material and can be easily ignited? A. With a flame direct, yes. . . . .

"Q. You said, Mr. Witness, you smoked one-half or three-fourths of an hour before the fire? A. Yes, sir.

"Q. Where were you when you were smoking at that time? A. Out in the vacant lot.

"Q. And were you smoking at any time in the building? A. No, sir.

"Q. What do you mean, you take a little rest and go outside? A. Yes, sir. It was always my habit. There is no man that could lay that material or any material and work in that position, you naturally would have to rest your body.

"Q. And that is what you meant when you said you smoked one-half or three-fourths of an hour before the fire? A. Yes, sir.

"Q. I understood you to say you had some chewing tobacco. You chew tobacco while you are working? A. All the time I work.

"Q. Is it your habit to chew and smoke at the same time? A. Yes."

The depositions of seven witnesses living in Chicago (where Gengenback lived) were read on behalf of complainant, and these witnesses all testified that they had worked with Gengenback; that his reputation and character for truth and veracity was good; that he was an efficient, careful and prudent workman, and three of these witnesses testified that Gengenback "never smokes on the job," and would not permit those working with him to smoke while at work.

There is no evidence in the record tending to impeach the character of defendant's witnesses for truth and veracity, and, while it seems improbable, in the sense that it would not be expected that under the circumstances Gengenback would smoke or throw light-

ed matches on the floor, it is much more improbable that so many witnesses of unimpeached character have knowingly testified falsely. We would not be justified in disregarding the positive testimony of defendant's witnesses, opposed by the testimony of Gengenback alone, merely because there is an abstract improbability that a man of Gengenback's knowledge, experience and reputation would do such a careless—seemingly reckless—act.

Treating the appellant's fourth assignment as challenging the Chancellor's finding that "while the said rezilite floor was being laid by the agent and representative of complainant and cross-defendant Thomas Mack, the said agent and representative, Frank Gengenback, did carelessly and negligently throw a flaming match upon the said rezilite floor, while knowing the highly inflammable character of some of the materials thereon, and while the same was being laid or constructed by him as such agent and representative of the said Thomas Mack, thereby setting fire to said floor and building, and practically destroying and burning the same while the said building was in the course of construction and near completion," we overrule said assignment and concur in the Chancellor's finding just stated.

2. The learned Chancellor, having found that the Greenville, Alabama, building in question was partially destroyed by a fire caused by the act of complainant's servant, Gengenback, as before stated, and that defendant thereby suffered a loss in the sum of $7948.16, then found "that the answer of the complainant and cross-defendant to the cross-bill filed herein sets up the legal defense that the act of the alleged servant of cross-defendant was not done in the scope of his employment, but was a tortious and wilful act for which the said cross-defendant is not liable, and that this defense is contained in the demurrer heretofore filed herein, and has been disposed of by this court in overruling the said demurrer, and the court's action thereon affirmed by the appellate court."

Referring to the finding and adjudication just quoted, it is said in appellant's first assignment of error that "the action of the Chancellor in holding that he was precluded by the decree of the Supreme Court from looking to any facts excepting that the building was set on fire by the servant of cross-defendant, Mack, in lighting a match to light his pipe and throwing it on the floor is erroneous."

In this connection, we may consider the contentions urged on behalf of appellant through his second assignment of error, which are as follows:

(a) That it is not alleged in defendant's cross-bill that the act of complainant's servant, Gengenback, in striking a match, light-

ing his pipe and throwing the match on the floor, was within the scope of the servant's employment, and that (as a matter of law) "the act of said servant in striking a match to light his pipe and smoke, was for his own pleasure and in no way fell within the scope of his employment."

(b) That "the case alleged in the cross-bill is not predicated upon the act of the servant acting within the scope of his employment, but upon an allegation that complainant was negligent in knowingly permitting said servant to smoke or negligent in not knowing it and preventing it."

We pause here to say that if the sole predicate of cross-complainant's right to relief was the allegation that complainant was negligent in knowingly permitting his servant, Gengenback, to smoke while working in the Greenville building, or negligent in not knowing of it and preventing it, cross-complainant is not entitled to a recovery, for the reason that the undisputed proof acquits complainant of negligence in these respects, and we so find the facts.

As we understand the opinion of the Supreme Court on the former appeal of this case (153 Tenn., 260, 283, S. W., 448), the question which appellant now seeks to make concerning the "scope of employment" of Gengenback, is settled adversely to appellant by that opinion. We do not base this conclusion upon the fact that one of the five grounds of complainant's demurrer to the cross-bill of defendant asserted, in effect, that the alleged negligent act of Gengenback was not within the scope of his employment; but upon what seems to us an unavoidable inference from the opinion that, in the performance of the contract, Gengenback, complainant's "foreman," was complainant's alter ego.

We agree with the learned counsel for appellant that the question which the Supreme Court decided was, whether the chancery court had jurisdiction to entertain the cause of action asserted by defendant's cross-bill, but the court treated the cause of action as based on the negligence of Gengenback, and not on the personal negligence of appellant Mack. It is stated in the opinion that, "the determinative question is whether the unliquidated claim for the alleged negligence of complainant's foreman under the circumstances set forth in the cross-bill can be presented as a counterclaim to complainant's action insofar as it seeks recovery upon the Greenville, Ala., contract."

The jurisdiction of the chancery court to entertain defendant's cross-bill was sustained under the Act of 1915, chapter 47, and obviously this was done upon the theory that cross-complainant was suing for unliquidated damages resulting from a breach of con-

tract. This seems clear from the opinion of the Supreme Court, the concluding paragraphs of which read as follows:

"Chapter 47, Acts of 1915, excluding only actions for unliquidated damages for injuries to persons or character and injuries to property not resulting from a breach of contract, extends jurisdiction to the chancery court concurrent with the circuit court. This statute authorizes the defendant to present his claim in a cross-action in the chancery court.

"The application of the rule depends upon the facts of each case from which it must be determined whether or not the matter presented by the cross-action of recoupment grew out of the plaintiff's demand; for recoupment relates to cross-demands inseparably connected with and arising out of the transaction on which the suit is grounded, and the right to recoup depends upon the complainant's failure to comply with some cross-obligation, or upon the violation of some duty which the law imposed in the making and performance of the contract. Lewis v. Woodfolk, 2 Baxt., 40; 34 Cyc. 623; 24 R. C. L., par. 55, 57, p. 851.

"In determining the right of the defendant to the defense of recoupment for matter arising out of plaintiff's demand, the entire transaction, requiring the things agreed to be done on each side as the condition passing between the parties, must be considered; and, when one seeks to recover on the contract, the other may demand by a cross-action recoupment for the breach of a duty expressly or by implication imposed by the contract.

"According to the allegations of the cross-bill, the act of negligence for which complainant seeks recoupment was inseparably connected with the performance of the complainant's contract at Greenville. The work required the use of inflammable fluid in laying the floors which the complainant agreed to lay. The defendant had a right to reasonably expect that in laying the floors, and while using the inflammable material, the complainant, or the foreman to whom complainant delegated the duty of executing the contract, would exercise reasonable care in the use of fire or matches, so as not to render valueless by a conflagration the work that was under construction by both parties. This implication inhered as strongly as the implied warranty attending a sale upon which the defendant could rely to recoup in damages for a breach of the contract; or the implication that one who agreed to manufacture raw material into articles of merchandise would refrain from converting or destroying the articles while in

the making, so that he could not return the property in its manufactured state to the owner.

"The decree of the Chancellor is affirmed, and the cause remanded for answer."

It goes without saying that the decision of any question by the Supreme Court in the opinion from which we have quoted is binding upon this court on the present appeal, for two reasons, viz: (a) it is the decision of our court of last resort, and (b) it has become "the law of the case." 2 R. C. L., pp. 223-227. The appellant's first and second assignments of error are overruled.

3. Through its third assignment of error, appellant insists that defendant cannot maintain its cross-action for the reason that, under its contract with complainant, it was to do certain things precedent to complainant laying the floors, which things were not performed and their performance was not averred in the cross-bill.

The "things precedent" which appellant says that appellee did not do are contained in a provision of certain "specifications" filed as Exhibit "C" to the deposition of complainant Mack, which provision is as follows: "It shall be especially provided that we are to receive uninterrupted possession of the area to be covered with rezilite, free from all trades during the operation of the floor work (for it is evident that we cannot do work on floors if they are going to be used by other trades.) If we are to apply rezilite floors where other trades are in the building or use the floors, the Rezilite Mfg. Co., will not be responsible for any damages caused by these trades, and additional expense where we must work with other trades shall be arranged between the parties. The area shall stand free from all traffic or occupation for seven days before use."

A condition precedent is "a condition which must be fulfilled" (by one party) "before the duty" (of the other party) "to perform an existing contract arises." 13 C. J., pp. 564-565.

If the above quoted provision of the "specifications" constituted a "condition precedent" (which is, to say the least, doubtful), and if it was breached by defendant to the extent claimed in appellant's brief, such breach was clearly waived by the act of appellant in proceeding with his performance of the contract notwithstanding such breach. 13 C. J., p. 671.

But, however this may be, appellant is not in a position to rely on the defense of non-performance of a condition precedent, because he did not plead it. Gibson's Suits in Chancery (2 Ed.), sec. 358. Appellant's third assignment of error is overruled.

4. We have hereinbefore disposed of appellant's fourth assignment of error. The appellant's fifth assignment is that the Chan-

cellor erred in declining to allow him interest on his claims for which judgment was rendered in his favor against the defendant below.

It is provided by Shannon's Code, section 3494, that "all bills single, bonds, notes, bills of exchange, and liquidated and settled accounts, signed by the debtor, shall bear interest from the time they become due, unless it is expressed that interest is not to accrue until a specific time therein mentioned."

In actions on any of the obligations enumerated in the statute just quoted, the allowance of interest is imperative. American University v. Parrish, 136 Tenn., 165, 166, 188 S. W., 1143; Railroad v. Fort, 112 Tenn., 432, 455, 80 S. W., 429; Knights of Pythias v. Allen, 104 Tenn., 623, 633, 58 S. W., 241; Brady v. Clark, 12 Lea, 323, 326; Stumps v. Cooper, 3 Baxt., 223.

But all cases not within the statute, supra, are governed by the common law, and (in non-jury cases) the allowance of interest is discretionary with the trial court. Tenn. Fertilizer Co. v. Int. Agri. Corp., 146 Tenn., 451, 473, 243 S. W., 81; Equitable Trust Co. v. Central Trust Co., 145 Tenn., 148, 185, 239 S. W., 171; Whitaker v. Postom, 120 Tenn., 207, 224, 110 S. W., 1019; Gibson County v. Rains, 11 Lea, 20, 24; Davidson County v. Olwill, 4 Lea, 28, 34.

It is argued that the claims of complainant presented by the original bill fall within section 3494, Shannon's Code, supra, for the reason that defendant filed an account, signed and verified by the oath of its "chief accountant," as an exhibit to its answer and cross-bill, in which account defendant "sets out the debt owing complainant." It is true that complainant's claims appear as credits in the account that defendant exhibited with defendant's answer, but the balance due the Rezilite Manufacturing Company from defendant Hugger Bros. Construction Company, as shown by said statement of account is only $194.84, and said statement is, therefore, not an admission of indebtedness beyond that amount. An account cannot be "liquidated" so long as it is disputed. See cases cited in 5 Words & Phrases Judicially Defined (1 Ed.), p. 4174.

A "settled" account is an account admittedly correct. Idem, Vol. 1, p. 93, and Vol. 7, p. 6447. "Any writing admitting an indebtedness and signed by the debtor" is a liquidated and settled account within the statute. Hayes v. Cheatham, 6 Lea, 1, 7.

It is also argued that the answer of defendant (which is signed "Hugger Bros. Construction Company, by C. T. Boyd, Atty."), admits that defendant is indebted to complainant for work and material on the job at Nashville, $6350, and at Greenville, Alabama, for $1793, and meets the requirements of the statute (Shannon's Code, section 3494, supra). We think this argument is based on

a misconception of defendant's answer, the pertinent portions of which are as follows: "Respondent admits that it had a contract with complainant as sub-contractor to furnish all labor and material required to install composition flooring in said Masonic Temple with rezilite compound, that said material was furnished and the work completed, but it specifically denies that it owes complainant $6350 as alleged, for reasons hereinafter to be stated. Further answering your respondent admits that it had a contract with complainant as sub-contractor to furnish labor and material required in the installation of the rezilite flooring 'in a building in the course of construction by it as general contractor at Greenville, Alabama, known as the Beeland, or Beeland Bros. Mercantile Company Building, at Greenville, Alabama, but specifically denies that it owes complainant the sum of $1793 for such labor and materials, for reasons now to be stated, which are as follows:" (Then follows the averments upon which the defendant, as cross-complainant, sought to predicate its claim for recoupment.)

Where there is a controversy over a claimed set-off, and the balance due the complainant is in dispute, the claim cannot be treated as liquidated, although the items of the complainant's claim are not disputed. Ostrander v. Scott, 161 Ill., 339, 43 N. E., 1089, 1091. Appellant's fifth assignment of error is overruled.

5. Through his sixth (and last) assignment appellant asserts that the Chancellor erred in refusing to declare a lien for the fees of complainant's solicitors on complainant's judgments against defendant under the original bill.

Complainant's solicitors had a lien for their fees upon the complainant's right of action from the date of the filing of the original bill, by virtue of the Act of 1899, chapter 243 (Shannon's New Code, section 3592a1).

We are of the opinion that the motion for the declaration of such a lien should have been sustained to the extent of a lien on the complainant's recovery against defendant of $6350 for the work done on the Scottish Rite Temple at Nashville. Defendant's right of recoupment was confined to the Greenville, Alabama, contract, and its right of set-off against complainant's recovery of $6350 on the Scottish Rite Temple contract depended upon Shannon's Code, section 4646, which provides that "judgments of the same court may be set-off against each other on motion."

The right of set-off given by the statute last quoted was subordinate to the lien for the fees of complainant's solicitors. Roberts v. Mitchell, 94 Tenn., 277, 29 S. W., 5; 2 R. C. L., pp. 1082-1083; Warfield v. Campbell, 38 Ala., 527, 82 Am. D., 724, 728; Puett v. Beard, 86 Ind. 172, 44 Am. R., 280, 281.

It is said, among other things, on behalf of appellee, in reply to the appellant's sixth assignment, that appellant's solicitors, and not appellant, are the parties interested in the lien, and that as they did not appeal, and have not assigned errors on their own behalf, this court has no jurisdiction of the question which appellant seeks to make by his sixth assignment of error.

A question thus presented was decided adversely to the contention of the present appellee by the appellate division of the Supreme Court of New York, in the case of Agricultural Insurance Company v. Smith, 98 New York Supp., 347, 350, wherein, after holding (contrary to the ruling of the trial court) that the attorney's lien was, under the facts of that case, paramount to the right of set-off, the court said:

"The respondent makes the point that the matter is not before us, because the appeal is taken in the name of the defendant, and not in that of the attorney, and cites Pomeranz v. Marcus, 86 App. Div., 321, 83 N. Y. Supp., 711. An inspection of that case discloses the facts there considered to be as follows: After the action was at issue, the defendant, without the intervention of his attorney, made a settlement with the plaintiff and exchanged general releases and consents to a discontinuance. The defendant's attorney, alleging that the settlement was made without his knowledge or consent, and collusively, for the purpose of defrauding him of his costs, thereafter moved in trial term to restore the case to the calendar for trial, 'for the purpose of protecting the rights of the defendant's attorney herein, and for the purpose of determining his right to the taxable costs of this action to date,' which motion was denied. The appellate division in the second department held that, the notice of appeal having been in the name of the client and not of the attorney, it must dismiss the appeal, because the notice of an appeal in such a case taken by the attorney would have to be served upon his client, and upon such an appeal the client, instead of being appellant, would be a respondent. But there, it will be perceived, the attorney and his client were acting in hostility to each other. It was the act of the client in settling and discontinuing the case behind the attorney's back which was the very matter complained of. The client wanted the action discontinued, and wanted it to stay so, and the attorney was moving to set aside said order against the client's will; and it was quite proper in such a case to hold that after discontinuance a motion ostensibly made by the client, but really by the attorney and for his benefit, would not lie, as not being made by the real party in interest. No such condition exists in the case

at bar. The attorney had obtained the judgment in his client's favor, and was still his attorney. As such attorney he opposed the motion for off-set; the order to show cause on said motion having been directed to be served upon him as such attorney. There was no hostility between client and attorney. No proceedings had been taken adversely to him by his client, but a motion which the client resisted through his attorney had been granted against him, and over his opposition, in favor of the plaintiff. It does not seem a sound proposition that the order made under such circumstances and binding upon the defendant, and which he had a right to oppose and did oppose, may not be appealed from by him.

"The order appealed from should be reversed, with $10 costs and disbursements, and the motion for an off-set denied, with $10 costs. All concur."

We think the reasoning of the New York court, in the excerpt above quoted, is sound, and is applicable to the instant case. It results that the Chancellor was in error in overruling the motion for a lien on complainant's recovery of $6350 for the Scottish Rite Temple contract, superior to defendant's right of set-off, and to that extent appellant's sixth assignment of error is sustained; but we are of the opinion that defendant's right of recoupment growing out of the breach of the Greenville, Alabama, contract was, and is, superior to the asserted lien for fees of complainant's solicitors on the complainant's claim of $1793 on the Alabama contract, and, with respect to the latter claim, appellant's sixth assignment is overruled.

6. The appellee's first and third assignments of error are so interrelated that they may be considered together. The first of said assignments is that the Chancellor erred in declining to permit appellee to withdraw its motion requesting that the amounts found due appellant and appellee be set off; and appellee's third assignment is as follows: "If the meaning of the Chancellor's decree be not to render judgment in favor of the appellant for the net difference between the amounts found due appellant and appellee, then the Chancellor erred prejudicially toward appellee in rendering a judgment against it for more than the net difference between said amounts, to-wit, $194.84."

Appellee bases these assignments mainly on sections 4643 and 4702, Shannon's Code, which sections are as follows:

Sec. 4643. "If the debt or demand so offered to be set off exceeds the amount of the plaintiff's demand, such excess being found by the jury, judgment shall be rendered against the plaintiff in favor of the defendant for such excess, and all costs."

Sec. 4702. "Such and so many judgments—joint, separate and cross—may be rendered as may be necessary to the rights of the parties, or one amount may be set off against another and judgment rendered for the residue, or judgment may be rendered for the defendant against the plaintiff for any amount or balance for which it is found that the plaintiff is liable."

It is the insistence of appellee that it was the duty of the Chancellor (upon the pleadings and proof) to render a judgment "only for the net difference between the amounts found due the appellant and the appellee," viz: $194.84. To sustain this contention of appellee would have no practical effect on the result in this case, except to subordinate the lien for solicitor's fees on the complainant's recovery of $6350 (for the Scottish Rite Temple contract) to a set-off in favor of defendant, and thus affirm the result reached by the Chancellor.

We have already stated our views on this question in disposing of appellant's sixth assignment of error. Defendant's cross-action of recoupment for damages applied only to the Greenville, Alabama, contract, and complainant's judgment for the sum due under the Scottish Rite Temple contract stands upon the same footing as if it had been rendered in an independent suit in the same court, and defendant's right to set off its judgment against same depends, as above stated, on Shannon's Code, section 4646, supra. Appellee's first and third assignments of error are overruled.

7. The second assignment of appellee is that the Chancellor erred in denying interest upon the amount sued for by defendant as cross-complainant.

Under the authorities cited in disposing of appellant's fifth assignment of error, supra, the allowance or denial of interest to either party in this case was a matter of discretion with the Chancellor, and we find no abuse of discretion in that respect. Appellee's second assignment is therefore overruled.

8. Appellee's fourth (and last) assignment is that "the Chancellor erred prejudicially toward appellee in admitting over appellee's objection appellant's Exhibit "C" to the deposition of appellant.

The exception to the admission of said Exhibit "C" is not now available to defendant, for the reason that the record shows no ruling on the objection, except the words "objections overruled; exception taken," noted on the face of the deposition (immediately following the objection), and the ruling thus noted is not "authenticated by the Chancellor," and, in order to dispense with a bill of exceptions, such authentication by the Chancellor is necessary. See Acts of 1905, ch. 49, sec. 1. (Shan. New Code, sec. 4836a1).

However, if the ruling noted was that of the Chancellor, we do not think it was erroneous. The objection was that the "specifications," Exhibit "C", was "wholly incompetent and inadmissible." The objection being thus general, it was properly overruled if the specifications were admissible for any purpose, and we think it was sufficiently shown that they were a part of the contract between the parties to make them competent. The appellee's fourth assignment of error is overruled.

This disposes of all the assignments of error. They are all overruled except appellant's sixth assignment, which is sustained to the extent before stated. The decree of the Chancellor will accordingly be modified so as to declare a lien for the fees of complainant's solicitor's on the complainant's recovery of $6350 under the Scottish Rite Temple contract, and to adjudge the defendant's right of set-off as against said recovery of $6350 to be subordinate to said lien for solicitor's fees; but otherwise the decree of the chancery court will be affirmed. The cause will be remanded to the chancery court for the ascertainment of said solicitor's fees and for the adjustment of the rights of the parties in harmony with the decree of the Chancellor as modified by this court. One-fifth of the costs of the appeal will be adjudged against the appellee Hugger Bros. Construction Company, and remaining four-fifths of the costs of the appeal will be adjudged against the appellant Thomas Mack and the surety on his appeal bond.

Crownover and DeWitt, JJ., concur.