## ISHAM H. EVANS v. W. H. RANEY et al.

Western Section.    March 31, 1932.

Petition for Certiorari denied by Supreme Court, July 23, 1932.

Harry Spears, W. H. Borsje and Frank Berry, of Memphis, for appellants.

W. C. Rodgers, of Memphis, for appellees.

OWEN, J. The complainant filed a bill in the Chancery Court of Shelby County against W. H. Raney and S. E. Reid, a partnership firm. The bill sought to recover $1000, alleging that a certain contract executed on the 10th of August, 1929, between the defendant partnership, and complainant wherein the complainant had leased the ground floor at 41 Union Avenue to the defendants, which lease began September 1, 1929, and terminated August 31, 1930.

It appears that the complainant owned the three-story building at 41-43 Union Avenue. Said building was leased to different tenants who occupied certain portions of said building. The building had a central heating plant, which was used for heating the entire building. This heating plant consisted of a boiler and furnace which

was heated with coal, and located in the basement under that portion of the building leased by the defendants.

It was the insistence of the complainant, in his bill, that the defendants had agreed to operate said heating plant for a certain sum, and furnish heat to the other tenants in said building, and that the defendants had breached their contract by reason of their servant, who operated said heating plant, had failed to operate it in the proper manner, and by reason of the defendants' carelessness and negligence, said heating plant burned out and was destroyed, and the furnace became worthless and was a total loss to complainant.

The complainant, in his bill, made the following allegations:

That it was definitely agreed and understood between defendants and himself that during the period of said lease, complainant was not to operate said furnace, but that defendants were to have exclusive control of said furnace during said period and were to operate the same in a careful manner and were to be responsible to complainant therefor. However, as aforesaid, the defendants, their agents and servants, who were in complete charge of said furnace during the period of said lease, negligently and carelessly operated said furnace so as to render same practically worthless as aforesaid.

The defendant filed a motion to dismiss complainant's bill, insisting in said motion that the chancery court was without jurisdiction, that said suit, by the complainant, was one for negligence and was not a suit for breach of contract. This motion was sustained by the Chancellor for lack of jurisdiction. There was an appeal to the Supreme Court where the cause was reversed.

In a memorandum opinion, the Supreme Court, speaking through Mr. Justice Swiggart, said:

"We are of opinion that the Chancellor was in error in dismissing the bill, complainant's suit is expressly grounded upon contract, and seeks a recovery upon no other theory than that the defendants agreed and contracted to operate the furnace, and to use it carefully, which agreement, it is charged was violated, giving rise to the damage claimed. The chancery court has jurisdiction to determine whether such contract was made, and if so, whether it was breached to the damage of the complainant. No other issue is presented.

"The decree of the Chancellor will accordingly be reversed, and the cause remanded for answer. The defendants will pay the cost of the appeal."

Upon the remand there was an answer filed denying the material allegations of complainant's bill, and later the defendants filed an amended answer, by leave of court. And it was pleaded, by way of defense, that the complainant had failed to observe a certain city ordinance requiring boiler inspection, and said ordinance re-

quired that each boiler installed in the City of Memphis should have one or more fusible plugs. And it was insisted, by not having a fusible plug in said boiler, that this was the direct and proximate cause of the damage.

Certain depositions were taken, and at the hearing complainant's bill was dismissed. The complainant excepted to the holding of the Chancellor. An appeal was prayed and perfected. And the complainant has assigned five errors; all of these errors submit one proposition, and that is the court erred in holding that the defendants did not contract or undertake to operate complainant's furnace. It is insisted by counsel for complainant as a proposition of fact that ' the defendants, pursuant to the contract provisions, did take charge of and operate the heating plant of the complainant from the time the same was installed.

The complainant submits the following proposition of law:

The defendants were required by law to exercise reasonable care and diligence in the performance of their contract and are liable to complainant for the damages resulting from their negligent failure so to do. Mack v. Hugger Bros. Const. Co., 153 Tenn., 260 (266), 283 S. W., 448; Mack v. Hugger Bros. Const. Co., 10 Tenn. App., 402.

The Chancellor filed the following opinion:

This is a suit for damages resulting from the alleged negligent operation of a furnace in a building owned by the complainant and leased to the defendants. The lease contained the following provision:

"In addition to the above notes Reid & Raney are to pay $50 per year for heat, said $50 to be payable May 1, 1930. I. H. Evans is to pay Reid & Raney $5 per week from November 1, 1929, to April 30, 1930, for labor furnished to heat the building. The $50 per year for heat to be paid Reid & Raney will be deducted from above labor bill at the end of the heating season, and the balance due Reid & Raney will be deducted from the May rent note."

This lease was in the same form as a prior lease between the same parties. The original lease was negotiated by Elmer Harris, Inc., real estate and rental agent, as the agent of the owner, the actual negotiations being with one Sanderlin, representing Elmer Harris, Inc.

The building was a three story, brick building used for cotton offices, with two offices on each floor; Reid & Raney occupied one of the ground floor offices. The building was heated from a central steam heating plant in the basement under the office leased to Reid & Raney. At the time the original lease was made, Sanderlin suggested to Raney that instead of employing an outside man to operate the furnace he would allow Reid & Raney $5 per week for the service of their porter to operate it; and in accordance with this

suggestion the above provision was inserted in the original lease, and copied in the new lease. ·The furnace was installed in the building in 1928, and Sanderlin instructed Reid & Raney's porter, Robert Prudent, how to operate it; and he operated it from that time until the 15th of January, 1930, when the boiler cracked and was ruined for lack of sufficient water.

Reid & Raney notified Elmer Harris, Inc., at once, and the latter had a new boiler installed at a cost of $540 which was paid by the complainant. Complainant made demand upon Reid & Raney to be reimbursed for this amount, and this demand being refused, the present suit was brought.

The only contract between the parties with reference to the operation of the furnace is contained in the above quoted provision in the lease.

It will be noted that the contract was to pay Reid & Raney $5 per week for labor furnished to heat the building; it was not a contract to operate the furnace as alleged in the bill. Instead of selecting an outside man to operate the furnace the owner selected Reid & Raney's porter as a proper person for this work and instructed him as to his duties. It is true he paid Reid & Raney for this part time service of their porter.

Under the terms of the lease complainant was to furnish heat in the building. He did not employ Reid & Raney to operate the furnace, but simply paid them for the part time service of their janitor to operate it. Reid & Raney are therefore not liable for the negligence in the operation of it, and complainant's bill must be dismissed at his cost.

M. C. Ketchum,
Chancellor.

We find as a fact that the complainant's agent, Sanderlin, at the time the heating plant was installed, employed Robert Prudent, a colored man who was a porter in the employ of the defendants. Sanderlin instructed Prudent how to operate the furnace. The defendants were paying Prudent $20 per week, and they agreed to let their porter take on the duties of the firing of the furnace, and defendants were to be paid $5 per week from the 1st of November to the 30th of April, or for a period of six months. The complainant furnished the coal for Prudent to use in heating the furnace. The defendants had nothing, whatever, to do with firing the furnace except they permitted their porter to attend to the furnace, and the defendants received $5 per week for the six months stated. Prudent was a lent servant for the purpose of operating the furnace. He had had experience in operating furnaces prior to the time that Sanderlin engaged him for the complainant. "The doctrine of lent servant relieves the general master from liability of the serv-

ant's negligence unless the master recommended or loaned an incompetent or negligent servant." 39 Corpus Juris, 137.

We are of the opinion that no contract is established between the complainant and the defendants whereby the defendants are liable for the damages to complainant's boiler or furnace. We have examined the two cases relied upon by counsel for the complainant, which appear to be law suits between the same parties. In the first cited case, in the opinion of the Supreme Court, by Justice Cook, the doctrine announced, and the controlling feature of the opinion is the distinction between a plea of set off and recoupment. In the latter case, an opinion by this court delivered by presiding Judge Faw, the controlling question is the liability of the master for his servant when the servant is guilty of negligence in the performance of his duty; the servant being the alter ego of the master. The principles announced in the two cases are not applicable to the facts of the instant case.

We find no error in the decree of the lower court. The assignments of error are overruled. The decree dismissing complainant's bill is affirmed. The complainant and his surety on appeal bond will pay all the costs of the cause, including the cost of the appeal, for which execution will issue.

Heiskell and Senter, JJ., concur.