## FEDERAL DEPOSIT INSURANCE CORPORATION, Plaintiff-Appellant,

v.

## Samuel P. NEWTON and Patrick L. White, Defendants-Appellees.

Court of Appeals of Tennessee,
Middle Section, at Nashville.

May 6, 1987.

Application for Permission to Appeal
Denied by Supreme Court
Sept. 8, 1987.

Boyd W. Venable, III, Rex R. Veal, Knoxville, for plaintiff-appellant.

Paul E. Jennings, Jennings, Derrick & Mashburn, Nashville, for defendants-appellees.

## OPINION

LEWIS, Judge.

This is an appeal by the plaintiff, Federal Deposit Insurance Corporation (FDIC), as receiver for the American Bank of St. Joseph, Tennessee (Bank), from the trial court's holding that it was not entitled to collect on promissory notes signed by defendants, Samuel P. Newton and Patrick L. White.

For the reasons hereafter set forth, we reverse.

The pertinent facts as stipulated to by the parties are as follows:

1. In late September or early October of 1983, Samuel P. Newton and Patrick L. White were each asked by Roger Pettus to sign a blank promissory note made payable to the American Bank of St. Joseph, Tennessee (hereinafter "American Bank"). They were all trusted friends.

2. Pettus told Newton and White that he needed each to sign a blank promissory note because he might need additional money for water and sewer taps at a condominium project in Destin, Florida.

3. Pettus told Newton and White that the notes were in blank because he did not know how much money might be needed for the water and sewer taps. Pettus told Newton and White that if additional money was needed for the water and sewer taps, he would have the notes filled in with the amount needed. Pettus told Newton and White that if additional money was not needed for the water and sewer taps, the notes would not be used. Newton and White each agreed, signed a note, and handed it to Pettus with none of the blanks filled in.

4. Newton knew that Pettus was unable to borrow additional funds from the American Bank. It was White's understanding that additional security was needed by the American Bank in connection with the financing of the condominium project.

5. Sometime later, Pettus and Gilbert Hammond, who was also involved in the condominium project, carried both notes to the American Bank. Pettus gave the notes to the bank's president, James Green. Pettus told Green that he was going to Florida and wanted to leave the blank notes with Green in case additional money was needed for the water and sewer taps at the condominium project. Pettus told Green that if additional money was needed for the water and sewer taps, he would call Green and authorize Green to fill in the notes for the amount of money needed. The bank would then wire him the money. Green agreed to these terms and put the blank notes in his desk. Green told Pettus to call him if additional money was needed on the water and sewer taps and he would then fill in the notes for the amount needed.

6. As it turned out, the water and sewer taps were never installed because

the property where the project was to be built was subsequently sold. Since additional money was not needed for the water and sewer taps, Pettus never called Green to authorize him to fill in the notes.

7. About ninety days after the notes had been signed, White received in the mail a notice from the American Bank that his note was due. White then contacted Newton about the notes. This was the first time Newton and White realized that their notes had in fact been completed.

8. Thereafter, Newton and White contacted Pettus about the payment notice. Pettus said that he did not understand why a notice had been sent as he never needed to use the notes. Pettus told Newton and White that he would speak to Green to see what had happened.

9. Green told Pettus that he had personally used the two blank notes and the proceeds therefrom. The note White signed had been filled in for the principal amount of $75,000.00 at a thirteen percent annual interest rate, with payment due ninety days from the date of the note, which was October 11, 1983. The note Newton signed had been filled in for the principal amount of $73,009.97 at a thirteen percent annual interest rate, with payment due ninety days from the date of the note, which was also October 11, 1983.

10. On October 7, 1983, Green made payments on several notes that he and his wife personally owed at the Bank of Lexington. Green's payments were in the form of cashier's checks issued by the American Bank on October 7, 1983. The remitters listed on the cashier's checks were either James Green or Elizabeth Green. The payments Green made that day totalled $148,009.97, which sum equals the proceeds from the 2 notes signed by Newton and White. RB PR.

11. James D. Green received the proceeds from the two notes signed by Newton and White.

12. Green told Pettus that he would pay off the notes within thirty to sixty days. Pettus conveyed this information to Newton and White and told them not to worry because Green would pay the notes.

13. Approximately ninety days after he received the first notice, White received a second notice from the American Bank. White contacted Pettus about this second notice. Pettus again told White that Green had assured him that he would pay the notes.

14. Before the American Bank closed, Newton also received a notice from the bank that his note was due.

15. In June 1984 White received approximately $3,200.00 in cash from Pettus. White was instructed by Pettus to use the money to make an interest payment on both his note and Newton's note. Pettus told White that Green had supplied the money. On June 12, 1984, White issued a check drawn on his personal account in the amount of $1,612.22 made payable to the American Bank. The payment was credited by the bank on June 13, 1984. White gave the remaining money to Newton with instructions to make an interest payment on his note. White advised Newton that Green had supplied the funds. On June 12, 1984, Newton issued a check drawn on his personal account in the amount of $1,612.22 made payable to the American Bank. This payment was credited by the bank on June 12, 1984. These two interest payments have been the only two payments credited to the notes in question.

16. Neither Newton nor White ever contacted anyone at the American Bank about their notes. Newton and White first contacted Green regarding payment of their notes after the American Bank had closed on June 27, 1984.

17. The principal balance due and owing on the promissory note signed in blank by Newton is $72,957.97.

18. The principal balance due and owing on the promissory note signed in blank by White is $75,000.00.

19. The accrued interest on the note signed by Newton, as of June 10, 1986,

equals $23,700.24. Interest accrues daily on this note in the amount of $25.99.

20. The accrued interest on the note signed by White, as of June 10, 1986, equals $24,360.74. Interest accrues daily on this note in the amount of $26.71.

21. On June 27, 1984, the Commissioner of Financial Institutions for the State of Tennessee declared the American Bank insolvent and appointed the Federal Deposit Insurance Corporation (hereinafter "FDIC") as receiver of the bank, pursuant to T.C.A. § 45–2–1502 and 45–2–802.

22. As authorized by 12 U.S.C. § 1821(e), the FDIC accepted such appointment as Receiver.

23. Included in the assets that the FDIC received as Receiver of the American Bank were the notes signed by Newton and White.

The trial court found that the Bank's president, James Green, was acting as agent for the Bank when he completed the blank notes which had been signed by Newton and White. He further found that Green's completion of the notes constituted a material alteration, pursuant to Tenn. Code Ann. § 47–3–407, attributable to the Bank and to FDIC as receiver for the Bank. The court also found that Newton and White's payment of the interest on the altered notes did not estop them from asserting the defense of material alteration because neither the FDIC nor its predecessor in interest, the Bank, relied on the actions of the defendants to its detriment.

The FDIC has raised six issues on appeal. We find it necessary to address only FDIC's fourth issue, which is: "Whether the trial court erred in holding that Newton and White were not estopped from raising their defenses to the notes." The FDIC argues that the defendants are precluded by estoppel, assent, ratification or waiver from asserting the defense of material alteration.

Tennessee Code Ann. § 47–3–407(2)(a) states: "As against any person other than a subsequent holder in due course alteration by the holder which is both fraudulent and material discharges any party whose contract is thereby changed unless that party assents or is precluded from asserting the defense."

Tennessee Code Ann. § 47–3–407(2)(a), comment 3c, states in part as follows:

Assent to the alteration given before or after it is made will prevent the party from asserting the discharge. "Or is precluded from asserting the defense" is added in paragraph (a) to recognize the possibility of an estoppel or other ground barring the defense which does not rest on assent.

■ The defendants assert that Green's unauthorized completion of the notes and misappropriation of the proceeds constitutes a material and fraudulent alteration under Tenn.Code Ann. § 47–3–407.

In Tennessee, the defense of material alteration is based on a showing of actual fraud, dishonesty or deceit on the part of the holder. *See Bank of Ripley v. Sadler,* 671 S.W.2d 454, 459 (Tenn.1984). To assert fraud, one must object to the fraud promptly after receiving notice of the fraud. *Pearsons v. Washington College,* 130 Tenn. 601, 606, 172 S.W. 314, 316 (1914). Further, to assert fraud one may not comply with the allegedly fraudulent contract with knowledge of the fraud. *Wells v. Holley,* 145 Tenn. 345, 348, 235 S.W. 430, 431 (1921). Otherwise, the defrauded party is deemed to have waived the fraud. *Pearsons v. Washington College,* 130 Tenn. at 606, 172 S.W. at 316; *Wells v. Holley,* 145 Tenn. at 348, 235 S.W. at 431.

Here, the defendants discovered the fraud and then accepted money from the party (Green) who defrauded them. The defendants then used the money from Green to make payments on the notes. Defendants each made the payments with checks drawn on their respective personal checking accounts. Defendants failed to object promptly to the fraud and, with full knowledge of the fraud, complied with the terms of the notes, each by making interest payments on the notes. Therefore, the defendants have waived any objection to Green's fraudulent conduct and, thereby, waived the defense of material alteration.

The defendants insist "[t]here was a fraudulent and material alteration of the promissory notes, an unperformed condition precedent, or a failure of consideration so as to discharge the defendants from liability" on the notes.

As shown above, the defendants waived the defense of fraudulent and material alteration.

■ Regarding their defense of an unperformed condition precedent, Tenn.Code Ann. § 47-3-306(c) states: "Unless he has the rights of a holder in due course any person takes the instrument subject to the defenses of want or failure of consideration, nonperformance of any condition precedent, nondelivery, or delivery for a special purpose...."

The defendants argue that "a condition precedent to the completion and enforcement of the notes was the extension of credit by the American Bank for the installation of water and sewer taps at the condominium project in which Pettus was involved."

In *Mack v. Hugger Brothers Construction Co.*, 10 Tenn.App. 402, 419 (1929), this Court defined a condition precedent as "a condition which must be fulfilled [by one party] before the duty [of the other party] to perform an existing contract arises." (quoting 13 C.J. *Contracts* § 532 at 564–565 (1917)). In *Mack*, this Court held that the party entitled to the condition precedent waives it by proceeding with the performance of the contract without the occurrence of the condition precedent. 10 Tenn. App. at 419.

We assume arguendo that the Bank is not a holder in due course and that the Bank's extension of credit to Pettus for the construction project constituted a condition precedent for defendants' liability on the notes. Nevertheless, the defendants waived the condition precedent by making the interest payments on the notes with knowledge that the condition precedent had not occurred. The defense of nonperformance of a condition precedent is not available to the defendants.

■ The defendants also assert the defense of failure of consideration provided by Tenn.Code Ann. §§ 47-3-306 and 47-3-408. Tennessee Code Ann. § 47-3-408, comment 3, states in part: "With respect to the necessity or sufficiency of consideration other obligations [*i.e.*, obligations other than an antecedent debt] on an instrument are subject to the ordinary rules of contract law relating to contracts not under seal." Consideration for a contract may consist of either a benefit to the promisor or a detriment to the promisee. *Robinson v. Kenney*, 526 S.W.2d 115, 118 (Tenn.App. 1973).

Here, the Bank suffered a detriment, the payment of approximately $148,000, in exchange for the notes bearing the signatures of the defendants.

Defendants rely on *Hallowell v. Turner*, 94 Idaho 718, 720–21, 496 P.2d 955, 957–958 (1972), for the proposition that "detriment to the promisee *unclouded and unaffected by fraud or mistake* is adequate consideration for the execution of a promissory note." (Emphasis added.) The defendants argue that the detriment suffered by the Bank cannot constitute consideration for the notes because the detriment was the result of fraud perpetrated by Green.

Unfortunately for the defendants, they have waived their right to assert fraud. Therefore, the detriment suffered by the Bank constitutes adequate consideration for the notes. The defendants' defenses are without merit.

The judgment of the trial court is reversed and the cause remanded to the trial court for the entry of judgment for the principal and interest due on the notes and for further necessary proceedings, including the collection of costs which are assessed against the defendants.

TODD, P.J., and CANTRELL, J., concur.