IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
May 18, 2010 Session

# CNX GAS COMPANY, LLC v. MILLER PETROLEUM, INC., ET AL.

**Appeal from the Chancery Court for Campbell County**
**No. 08-071      Billy Joe White, Chancellor**

---

**No. E2009-00226-COA-R3-CV - FILED - MAY 11, 2011**

---

This appeal involves a business transaction for the assignment of oil and gas leases. The parties are sophisticated in the oil and gas industry and include CNX Gas Company, LLC ("CNX"), Miller Petroleum, Inc. ("Miller"), Atlas America, LLC ("Atlas"), and Wind City Oil & Gas, LLC ("Wind City"). CNX and Miller entered into a binding Letter of Intent ("LOI") for the assignment of oil and gas leases owned by Miller. Prior to signing the LOI, CNX knew that the leases were the subject of pending litigation between Miller and Wind City. The letter of intent outlined the details of the transaction and a closing date. On the closing date, Miller refused to close the transaction with CNX, claiming that it did not have possession of the leases. Approximately one week later, Miller entered into a similar deal for the assignment of those leases with Atlas. The transaction between Miller and Atlas was worth substantially more than the transaction with CNX. Thereafter, CNX sued Miller for breach of contract; CNX also sued Atlas and Wind City for inducement to breach a contract. Miller and Atlas filed motions for summary judgment following discovery that involved depositions. After a hearing, the trial court granted summary judgment finding that the LOI permitted Miller to opt out of the closing. CNX appeals. After reviewing the record, we find the trial court erred in granting summary judgment. The LOI only provided CNX with the option to opt out of the transaction. Accordingly, we reverse.

**Tenn. R. App. P. 3; Judgment of the Chancery Court**
**Reversed; Case Remanded**

JOHN W. MCCLARTY, J., delivered the opinion of the Court, in which HERSCHEL P. FRANKS, P.J., and CHARLES D. SUSANO, JR., J., joined.

Martin B. Bailey, Wesley E. Shipe, and Charles W. Van Beke, Knoxville, Tennessee, for the appellant, CNX Gas Company LLC.

Stephen A. Marcum, Huntsville, Tennessee, for the appellee, Miller Petroleum, Inc.

Matthew J. Evans, Daniel C. Headrick, and Joshua R. Walker, Knoxville, Tennessee, for the appellee, Atlas America, LLC.

Andrew L. Colocotronis, Knoxville, Tennessee, for the appellee, Wind City Oil and Gas, LLC.

**OPINION**

## I. FACTUAL BACKGROUND

Miller and CNX entered into a binding LOI on May 29, 2008, memorializing a business transaction. The transaction required Miller to assign oil and natural gas leases ("the Leases") located in Campbell County, Tennessee to CNX for approximately $13 million dollars. The LOI created an exclusive option period from the date the parties executed the agreement until 5:00 p.m. on June 6, 2008, at which time, the parties were to close the transaction ("the Closing"). During the option period, CNX maintained the exclusive option to enter into the assignment with Miller, and the LOI's terms prohibited Miller from entertaining competing offers for the Leases. At the time of entering the LOI, CNX was aware that the Leases to be acquired were the subject of ongoing litigation between Miller and Wind City. CNX drafted the LOI with several provisions allowing it to opt out of the Closing if it was unsatisfied with the resolution of the pending litigation.

On June 6, 2008, representatives from CNX appeared at Miller's office in Huntsville, Tennessee to close the transaction. However, Miller refused to close. Miller claims that it refused to close the transaction because it did not have possession of the Leases due to the pending litigation with Wind City and that the LOI provided it with the right to opt out of the Closing for that reason. On that same day, CNX sent Miller a letter demanding that it close the transaction pursuant to the terms of the LOI. Three days later, CNX sent another letter of intent, with nearly identical provisions as the original LOI, however it included automatic renewal provisions and an offer of more money. Despite CNX's attempts, Miller refused to close the transaction.

Within days of refusing to close the transaction with CNX, Miller began negotiating a similar deal for the assignment of the Leases with Atlas ("Atlas deal"). During the exclusive option period, Atlas sent an offer to purchase the Leases to Miller. Richard Weber, President and Chief Operating Officer of Atlas, testified in his deposition that Atlas had previously engaged in negotiations with Miller for the Leases. After learning of the transaction between CNX and Miller, Mr. Weber testified that he sent a revised offer to Miller. In the deposition of Deloy Miller, CEO of Miller, he testified that he did not review any proposals from Atlas during the exclusive option period. Mr. Miller acknowledged

receiving emails from Mr. Weber of Atlas during the exclusive option period, but he denied reading the emails or having any communications with Atlas representatives.

The Atlas deal, in which Atlas paid Miller over $19 million dollars, closed on June 12, 2008. The following day the ongoing litigation with Wind City formally ended with a final settlement agreement. The Atlas deal covered eight additional wells that were not included in the CNX transaction.

CNX filed a Verified Complaint for Injunctive Relief and Damages against Miller, Atlas, and Wind City on June 11, 2008.[1] CNX sought a restraining order to enjoin Miller from assigning the Leases and alleged a breach of contract claim against Miller, claiming that Miller breached the LOI by: (1) refusing to close the transaction on June 6, 2008 and (2) entertaining competing offers from Atlas during the exclusive option period. CNX further alleged a claim of inducement to breach a contract against Atlas and Wind City. After a hearing, CNX's motion for a restraining order was denied.[2]

Discovery ensued with several witnesses giving depositions. During discovery, CNX filed a Notice of Deposition for Stephen Marcum, Miller's counsel, and a Motion to Compel Miller to Produce Electronic Documents with metadata including email correspondence between Miller, its counsel, and Atlas. Miller responded by filing a Motion to Quash the Notice of Deposition and Motion for a Protective Order. After a hearing on the motions including CNX's request for a continuance of the trial date, the trial court granted Miller's Motion to Quash and Motion for Entry of a Protective Order, prohibiting CNX from taking Mr. Marcum's deposition. The trial court granted CNX's request for a continuance and its Motion to Compel, ordering Miller to produce electronic documents with metadata. The trial court specified that those electronic documents produced should not include documents protected by attorney-client privilege or the attorney work product doctrine. The court also ordered CNX to assume Miller's costs for production of the electronic documents.

Miller and Atlas respectively filed motions for summary judgment, for which the hearing was held on December 16, 2008. CNX replied to the motions with statements of material fact and an affidavit, pursuant to Tennessee Civil Procedure Rule 56.07, claiming

---

[1]CNX later filed an Amended Verified Complaint for Injunctive Relief and Damages.

[2]In the trial court's order denying CNX a restraining order, the court stated that the parties represented to the court that "the settlement of the New York Litigation [with Wind City] would require financing from some source; and that Atlas was willing to provide funding to Miller for the settlement of the New York Litigation, conditioned upon Miller's conveyance of the Leases to Atlas upon Wind City's conveyance of the Leases to Miller as part of the settlement of the New York Litigation."

that it needed additional time to review the electronic documents produced by Miller.[3] After considering the evidence, the trial court granted the motions for summary judgment and dismissed CNX's claims. The court found that its grant of summary judgment also applied to Wind City and therefore dismissed that claim. Thereafter, CNX filed a timely notice of appeal.

## II. ISSUES

CNX raises the following issues on appeal:

1. Whether the trial court erred in interpreting the LOI and granting summary judgment by finding that Miller was excused from closing due to lack of possession of some of the Leases.

2. Whether the trial court erred in finding that CNX could not prove at trial that Miller breached the LOI by failing to close when CNX demanded closing and Miller made no showing of good faith and fair dealing.

3. Whether there is a dispute of material fact concerning if Miller entertained any separate offers for the Leases during the exclusivity period.

4. Whether the trial court erred in striking CNX's Rule 56.07 affidavit and shifting Miller's electronic discovery costs to CNX.

Atlas and Wind City submit 3 additional issues on appeal:

1. Whether CNX preserved for appeal the issue of the trial court's grant of the motions of summary judgment in favor of Atlas and Wind City.

2. Whether the trial court correctly interpreted the LOI and correctly found that Miller could not close due to unresolved litigation when the LOI expired, such that no breach occurred.

3. Wind City also submits whether there are genuine issues of material fact regarding CNX's claims against Wind City.

---

[3]From our review of the record, CNX did not file a formal motion along with the Rule 56.07 affidavit.

## III.  STANDARD OF REVIEW

Tenn. R. Civ. P. 56.04 provides that summary judgment is appropriate where:  (1) there is no genuine issue with regard to the material facts relevant to the claim or defense contained in the motion, *see Byrd v. Hall*, 847 S.W.2d 208, 210 (Tenn. 1993); and (2) the moving party is entitled to judgment as a matter of law on the undisputed facts.  *See Anderson v. Standard Register Co.*, 857 S.W.2d 555, 559 (Tenn. 1993).

In *Hannan v. Alltel Publ'g Co.*, 270 S.W.3d 1 (Tenn. 2008), the Tennessee Supreme Court clarified the moving party's burden of proof in a summary judgment motion.  A moving party who seeks to shift the burden of production to the nonmoving party who bears the burden of proof at trial must either:  (1) affirmatively negate an essential element of the nonmoving party's claim; or (2) show that the nonmoving party cannot prove an essential element of the claim at trial.  *Id.* at 5.  According to the Court, when a party seeking summary judgment has made a properly supported motion, the burden shifts to the non-moving party to set forth specific facts establishing the existence of disputed, material facts which must be resolved by the trier of fact.  *Id.; see Byrd*, 847 S.W.2d at 215; *Robinson v. Omer*, 952 S.W.2d 423, 426 (Tenn. 1997).  The non-moving party may not simply rest upon the pleadings, but must offer proof by affidavits or other discovery materials (depositions, answers to interrogatories, and admissions on file) to show that there is a genuine issue for trial.  If the non-moving party does not so respond, then summary judgment, if appropriate, shall be entered against the non-moving party.  Tenn. R. Civ. P. 56.06.

There is no presumption of correctness for summary judgments on appeal.  See *City of Tullahoma v. Bedford County*, 938 S.W.2d 408, 412 (Tenn. 1997).  This court must view all of the evidence in the light most favorable to the non-movant and resolve all factual inferences in the non-movant's favor.  *Luther v. Compton*, 5 S.W.3d 635, 639 (Tenn. 1999); *Muhlheim v. Knox County Bd. of Educ.*, 2 S.W.3d 927, 929 (Tenn. 1999).  When the undisputed facts, however, support only one conclusion, then the moving party is entitled to judgment as a matter of law and a summary judgment will be upheld.  *See White v. Lawrence,* 975 S.W.2d 525, 529 (Tenn. 1998); *McCall v. Wilder*, 913 S.W.2d 150, 153 (Tenn. 1995).

## IV.  DISCUSSION

### Summary Judgment in Favor of Miller

CNX challenges the trial court's grant of summary judgment in favor of Miller for several reasons.  CNX contends that the trial court erred in interpreting the language of the

LOI and in finding that Miller was excused from closing the transaction.

The interpretation of written agreements is a matter of law, which this court reviews de novo without a presumption of correctness. *See Guiliano v. Cleo, Inc.*, 995 S.W.2d 88, 95 (Tenn. 1999). The cardinal rule of contract interpretation is that the court must attempt to ascertain and give effect to the intention of the parties. *Christenberry v. Tipton*, 160 S.W.3d 487, 494 (Tenn. 2005). In attempting to ascertain the intent of the parties, the court must examine the language of the contract, giving each word its usual, natural, and ordinary meaning. *See Wilson v. Moore*, 929 S.W.2d 367, 373 (Tenn. Ct. App. 1996). The court's initial task in construing the contract is to determine whether the language is ambiguous. *Planters Gin Co. v. Fed. Compress & Warehouse Co.*, 78 S.W.3d 885, 889-90 (Tenn. 2002). A contract is ambiguous if its meaning is uncertain and is susceptible to more than one reasonable interpretation. *See Bonastia v. Berman Bros.*, 914 F.Supp. 1533, 1537 (W.D. Tenn. 1995); *Frank Rudy Heirs Assocs. v. Moore & Assocs., Inc.*, 919 S.W.2d 609, 613 (Tenn. Ct. App. 1995); *Gredig v. Tennessee Farmers Mut. Ins. Co.*, 891 S.W.2d 909, 912 (Tenn. Ct. App. 1994). If we determine that the language of a contract is ambiguous, we construe the ambiguity against the drafter of the contract. *See Hanover Ins. Co. v. Haney*, 425 S.W.2d 590, 592 (Tenn. 1968); *Realty Shop, Inc. v. RR Westminster Holding, Inc.*, 7 S.W.3d 581, 598 (Tenn. Ct. App. 1999).

Nevertheless, if the language in a contract is plain and unambiguous, courts then "determine the parties' intention from the four corners of the contract, interpreting and enforcing [the contract] as written." *Union Realty Co., Ltd. v. Family Dollar Stores of Tenn., Inc.*, 255 S.W.3d 586, 591 (Tenn. Ct. App. 2007) (citing *Int'l Flight Ctr. v. City of Murfreesboro*, 45 S.W.3d 565, 570 (Tenn. Ct. App. 2000)). If the language is clear and unambiguous, "the literal interpretation of the language controls the outcome of the contract disputes." *Planters Gin Co.*, 78 S.W.3d at 890. We construe all provisions of a contract in harmony with each other, "if such construction can be reasonably made, so as to avoid repugnancy between the several provisions of a single contract." *Rainey v. Stansell*, 836 S.W.2d 117, 119 (Tenn. Ct. App. 1992).

The LOI provides, in pertinent part:

Dear Mr. Miller:

CNX Gas Company LLC ("CNX" or "Assignee") proposes to acquire by assignment ("the Assignment") from Miller Petroleum, Inc. and its affiliates (collectively "Miller Petroleum" or "Assignor") the following assets and rights:

(i) the entire leasehold interest in that certain lease (or, should Miller Petroleum not own the entire leasehold interest in such lease, Miller Petroleum's interest therein) from Warren R. Webster, Attorney in Fact for Mrs. Louis Francis et al, to R.E. Puckett dated March 20, 1974, and of record in Lease Book 11, Page 246 in the office of the Register of Deeds for Campbell County, Tennessee, covering some 27,620 acres, a copy of which is attached hereto as Exhibit A (hereinafter such lease is referred to as the "Koppers Lease"), and

(ii) the entire leasehold interest in those certain leases (or, should Miller Petroleum not own the entire leasehold interest in such leases, Miller petroleum's interest therein), covering some 1,592 acres described on Exhibit B (hereinafter such leases are referred to as the "Miscellaneous Leases").

Collectively, the leases to be assigned by Miller Petroleum to CNX, including, without limitation, the Koppers Lease and each of Miscellaneous Leases, are hereinafter referred to collectively as the "Leases."

Miller Petroleum and CNX agree as follows:

1.  If pursuant to the terms of this Letter of Intent, the parties enter into the Assignment, the Parties agree as follows:

    a. the purchase price shall be FOUR HUNDRED and FIFTY ($450.00) per net mineral acre with respect to which Miller is determined to have good and marketable title assigned to CNX by Miller Petroleum upon execution of the Assignment (the "Purchase Price");

    b. the Leases shall be assigned to CNX with a warranty against the claims of any and all persons claiming by, through, or under Miller Petroleum;

    c. CNX shall be entitled to review all title materials relating to the Leases in the hands of Miller Petroleum or accessible to Miller Petroleum and such additional title material as CNX may choose; and

    d. Miller Petroleum shall retain forty (40) acres around each of the following producing wells on the Koppers Lease (for a total of seven hundred and twenty (720) retained acres). . . .

2.  For a period from the date of Miller Petroleum's execution of this Letter of

Intent until 5:00 on Friday, June 6, 2008, (a) Miller Petroleum shall grant CNX the exclusive option and right to enter into the Assignment with Miller Petroleum. Subject to the provisions herein, the parties hereto agree to close the transaction contemplated by this Letter of Intent at 5:00 6/6/08 on Friday, June 6, 2008 at the offices of Miller Petroleum at the address of 3652 Baker Hwy, Huntsville TN 37516 ("the Closing"). Provided, however, if during such period any litigation or material defect affecting title to the Leases has not been resolved satisfactorily to CNX, CNX shall not be required to close the transaction but the option period may be extended with the consent of each of the parties hereto. Miller Petroleum shall not during such period solicit or entertain any offers or proposals of, or enter into any agreement with, third parties to acquire an interest in the Leases, nor negotiate or discuss the sale of an interest in the Leases; (b) at the Closing, Miller Petroleum shall execute the Assignment to CNX in a form satisfactory to CNX, at which time CNX shall pay the sum of the Purchase Price to Miller Petroleum, which sum shall be credited by the amount of One Million Dollars ($1,000,000.00) paid pursuant to paragraph 3 hereof; (c) the Assignment shall assign to CNX all depths owned by Miller Petroleum under the Leases, other than the Miller Retained Assets, which depths at a minimum shall include from the surface to the bottom of and through the deepest Chattanooga Shale; (d) CNX shall have a period of thirty (30) days from Closing to examine title to the leasehold estates assigned by Miller Petroleum to CNX and the mineral estates covered by the Leases; (e) Miller Petroleum agrees to promptly provide all documents reasonably requested by CNX to assist CNX in evaluating the oil, gas and coalbed methane within or under the property covered by the Leases, the title to the leasehold estates and the mineral estates covered by the Leases, and all other documents reasonable deemed necessary by CNX to fulfill the terms of this Letter of Intent, including without limitation documents evidencing Miller Petroleum's authority to enter into the Assignment; and (f) by 5:00 p.m., Eastern Daylight Time, thirty (30) days from Closing, CNX shall provide Miller Petroleum with a statement of the amount of acreage to which CNX has found title to be unacceptable, including the failure to resolve to the satisfaction of CNX any litigation affecting title to the Leases, or any outstanding indebtedness or liens affecting the same; upon receipt of such report Miller Petroleum shall within five (5) business days return to CNX the prorata amount of the Purchase Price paid based upon FOUR HUNDRED AND FIFTY DOLLARS ($450.00) per net mineral acre to which title was found to be unacceptable to CNX and any such acreage found to be unacceptable to CNX shall be assigned back to Miller upon receipt of the aforesaid payment.

3.  As consideration for this Letter of Intent and the terms and conditions contained herein, including without limitation the exclusive option and right to enter into the Assignment as set forth in paragraph 2, upon receipt by CNX of a copy of this Letter of Intent fully executed by Miller Petroleum, CNX shall pay Miller Petroleum the amount of ONE MILLION DOLLARS ($1,000,000.00) by 5:00 Eastern Daylight Time, Friday, May 30, 2008; provided, however, that should Miller Petroleum be unable to enter into the Assignment contemplated by this Letter of Intent within the option period set forth in paragraph 2 due to unresolved litigation affecting title to the Leases, then within five days after the expiration of the option period Miller Petroleum shall return the ONE MILLION DOLLARS ($1,000,000.00) to CNX.  Such sum of ONE MILLION DOLLARS shall be credited to the Purchase Price to be paid by CNX at Closing, such that the Purchase Price shall be reduced by the ONE MILLION DOLLARS ($1,000,000.00) paid pursuant to this paragraph 3.

4.  CNX shall have no obligation to enter into the Assignment to acquire the Leases (or Miller Petroleum's interest therein) unless each of the following conditions precedent have been strictly fulfilled:  (a) any and all litigation affecting title to the Leases have been resolved satisfactorily to CNX; and (b) Miller Petroleum has provided information reasonably satisfactory to CNX and that Miller Petroleum has the necessary authority to enter into the Assignment.

* * *

6.  This Letter of Intent shall expire at midnight on May 30, 2008, unless Miller Petroleum acknowledges and returns to the undersigned a fully executed copy of this Letter of Intern prior to such time, or unless otherwise extended by mutual agreement of CNX and Miller Petroleum and, upon expiration of this Letter of Intent, CNX shall have no obligation to enter into the Assignment or any other agreement with respect to the Leases. . . .

In interpreting the language of the LOI, the trial court found and held:

There's absolutely no evidence that Miller violated the exclusive right to purchase provisions.  I think CNX has filed suit based primarily upon the amount of time and the amount of money involved in the difference in the CNX deal and the Atlas deal, which was six million dollars or so and it does

-9-

involve a different transaction. A copy of that is on file. There's eight additional oil wells involved in that, some other items, and the deal did close fairly soon, but in the oil industry, things sometimes happen fast and sometimes very slow. Very slow with Wind River [Wind City] negotiations in New York where they filed suit up there concerning the leases. And this contract was drawn by CNX on the issue of breach of contract and it clearly has a provision that if Miller does not have possession of these leases at the time of closing, there's no deal and an extension of time has to be mutual so there's no evidence in this record that Miller failed to try to gain possession. This litigation up there had been going on for a long time and he did not have, on June 6th, possession of the leases, therefore, he did not refuse to close, he could not, under the contract, close and, I can't imagine that CNX would even consider closing and him without the leases that are most valuable. They admitted in the evidence that they did not ask to close outside those leases on the additional leases involved so I don't think there's any disputed issues of fact left in this case. I think Miller is entitled to summary judgment.

The trial court proceeded to also grant summary judgment in favor of Atlas and Wind City.

Miller contends that the trial court correctly interpreted the LOI and highlights the deposition testimony of several witnesses in support of its contention. For instance, in Mr. Miller's deposition, he explained that he "told them [CNX] that we [Miller] had problems with Wind City, that we'd been close to closing and never got closed, and that it would be tough. . . ." Miller argues that paragraph two of the LOI provided CNX with an "out" from the transaction in the event of unresolved litigation or title defects while paragraph three provided Miller with an "out" if it could not resolve the pending litigation with Wind City. According to Miller, CNX sending another letter of intent after the expiration of the initial exclusivity period with an offer of more money illustrates that CNX also understood that Miller was under no obligation to close the transaction due to the unresolved litigation with Wind City. We disagree.

As stated earlier, when ascertaining the intention of the parties through the plain language of the contract, this court construes the contract's provisions in harmony with each other, if such construction can be reasonably made, in order to avoid repugnancy. *Rainey*, 836 S.W.2d at 119. Neither of the parties assert that the LOI is ambiguous, and the trial court also did not make such a finding. We agree that the LOI is not ambiguous. When a contract's language is clear and unambiguous, "the contract is interpreted according to its plain terms as written, and the language used is taken in its 'plain, ordinary, and popular sense.'" *Maggart v. Almany Realtors,* 259 S.W.3d 700, 704 (Tenn. 2008) (quoting *Bob Pearsall Motors v. Regal Chrysler–Plymouth,* 521 S.W.2d 578, 580 (Tenn. 1975)). "The

-10-

interpretation should be one that gives reasonable meaning to all of the provisions of the agreement, without rendering portions of it neutralized or without effect." *Maggart,* 259 S.W.3d at 704; *see Cocke County Bd. of Highway Comm'rs v. Newport Utils. Bd.,* 690 S.W.2d 231, 237 (Tenn. 1985) (courts must view entire contract from beginning to end because one clause may modify, limit, or illuminate another); *Planters Gin Co.,* 78 S.W.3d at 890 (courts must determine parties' intentions based on literal meanings of words parties used in the contract when contract is unambiguous). The court enforces the parties' contract as it is written; it does not make a new contract for the parties. *Maggart,* 259 S.W.3d at 703–04; *Berry v. Prudential Ins. Co. of America,* 134 S.W.2d 886, 889–90 (Tenn. Ct. App. 1939).

A straightforward reading of the entire LOI leads to the conclusion that CNX was the only party without any obligation to enter into the Assignment due to the pending litigation. Throughout the entire LOI, the language repeatedly reiterates that CNX reserved the right to not enter the Assignment if it was unsatisfied with the resolution of the pending litigation. In fact, paragraph four of the LOI outlines the conditions precedent that if "strictly fulfilled" would trigger CNX's obligation to enter the Assignment. One of the conditions precedent expressly states that any litigation affecting the title to the Leases be "resolved satisfactorily to CNX."[4] There is no such language within the LOI reserving such a right to Miller.

In support of its argument, Miller urges this court to narrowly read the LOI by isolating a single clause – a clause that Miller claims provided it with the option to opt out of the Assignment if the pending litigation was unresolved by the expiration of the exclusivity period. Granted, paragraph three does indeed provide that Miller shall return the one million dollars paid as consideration by CNX "should Miller Petroleum be unable to enter into the Assignment" because of "unresolved litigation." However, contrary to Miller's position, we do not interpret that clause to mean that Miller also reserved the right to opt out of closing the transaction. First, the language Miller claims provided it with the right to opt out of the Closing markedly differs from the language used throughout the LOI that reserves CNX's right to opt out of the Closing. If the parties intended to reserve such a right for Miller, then similar and express language reserving such a right would be reflected in the LOI. Second, paragraph three details the amount of consideration paid by CNX to Miller for agreeing to the terms of the LOI. The clause upon which Miller constructs its argument concerns the return of the amount paid as consideration in the event that the transaction did

---

[4]Contracts reserving to one party the right of satisfaction or approval of certain acts or conditions as a condition precedent to performance are recognized as valid in Tennessee. *Robeson & Weaver v. Ramsey,* 245 S.W. 413 (Tenn. 1922). A condition precedent assumed by a party must be fulfilled by him before he can demand performance of the other party. *Interstate Bldg. Corp. v. Hillis,* 66 S.W.2d 597 (Tenn. Ct. App. 1933); *Mack v. Hugger Bros. Constr. Co.,* 10 Tenn. App. 402 (1929).

not close. We read "should Miller be unable to enter" to mean that Miller would be unable to close the transaction because CNX was unsatisfied with the resolution of the pending litigation. Several provisions within the LOI support this interpretation.

Paragraph two includes two subsections that provide that the pending litigation should be resolved in a manner satisfactorily to CNX. Paragraph two, subsection (a) states that the parties agree to close the transaction by 5:00 p.m., provided that "during such period *any litigation or material defect affecting title to the Leases has not been resolved satisfactorily to CNX.*" (emphasis added). Subsection (f) goes further and outlines that within 30 days of closing the transaction "CNX shall provide Miller Petroleum with a statement of the amount of acreage to which CNX has found title to be unacceptable, including *the failure to resolve to the satisfaction of CNX any litigation affecting title to the Leases*, or any outstanding indebtedness or liens affecting the same. . . ." (emphasis added). Subsection (f) of paragraph two is critical because it deflates Miller's contention that it was impossible to close the transaction because it did not have possession of the leases. The language of subsection (f) demonstrates that the parties may have closed the transaction without all of the subject Leases. Under the plain and ordinary meaning of the words used in paragraph two, subsection (f), the LOI contemplated the transaction closing without the complete resolution of the pending litigation because that provision governs Miller's return of payment to CNX for the acres that CNX deemed unsatisfactory due to title defects or pending litigation *after* the Closing. In sum, CNX choosing to enter into the Assignment with the pending litigation unresolved was its prerogative that it reserved as a right under the LOI. The LOI does not provide Miller with the same right.

These provisions coupled with the conditions precedent of paragraph four lead to one reasonable conclusion: CNX was the only party to reserve the right to opt out of the Closing if the pending litigation was resolved in a manner unsatisfactory to it. As this court explained in *Seraphine v. Aqua Bath Co.*:

> Courts must avoid rewriting an agreement under the guise of interpreting it. *Marshall v. Jackson & Jones Oil, Inc.,* 20 S.W.3d 678, 682 (Tenn. Ct. App 1998). The courts will not make a new contract for parties who have spoken for themselves. *Petty v. Sloan,* 277 S.W.2d 355, 359 (1955), and will not relieve parties of their contractual obligations simply because these obligations later prove to be burdensome or unwise.

*Seraphine v. Aqua Bath Co.*, No. M2000-02662-COA-R3-CV, 2003 WL 1610871, at *4 (Tenn. Ct. App. M.S., Mar. 28, 2003) (citing *Boyd v. Comdata Network, Inc.*, 88 S.W.3d 203, 223 (Tenn. Ct. App. 2002)).

Lastly, we address Miller's argument that CNX's actions subsequent to the expiration of the exclusivity period illustrate that CNX also understood that Miller was under no obligation to close the transaction due to the pending litigation. We fail to find any merit in this argument. After Miller refused to close on June 6, 2008, – the closing date – CNX sent a demand letter to Miller. In that letter, dated June 6, 2008 CNX stated:

> Be advised that CNX is ready, willing and able to exercise the option pursuant to Section 2 of the Letter Agreement [LOI], subject to the resolution of the litigation affecting the Leases, as of 5:00 p.m. on June 6, 2008, as provided for in the Letter Agreement. Nevertheless, you indicated to our representative who were present for the Closing, at approximately 4:20 p.m. on June 6, 2008, that Miller Petroleum does not intend to close the transaction or to extend the option.

Three days later, CNX sent another letter of intent, dated June 9, 2008, which was nearly identical to the original LOI except an offer of more money and automatic extensions for the closing date. Although Miller claims that this additional LOI contravenes CNX's position, we disagree. David Miller, a district land manager for CNX, testified in his deposition that CNX sent an additional letter of intent as a "last ditch effort to avoid litigation." CNX made attempts to close the original transaction as contemplated by the LOI, and those attempts do not undermine the obligations undertook by Miller when it agreed to the terms of the LOI. To adopt Miller's interpretation of the LOI would require this court to rewrite the agreement, and we decline to do so.

Giving effect to the plain meaning of the words used in the LOI, we find that the trial court misinterpreted the LOI and erred in granting the dispositive motion. We reverse the grant of summary judgment. In light of our finding, any further discussion of the additional issues arising from the trial court's grant of summary judgment is pretermitted. We need not address CNX's argument regarding its Tennessee Rule of Civil Procedure 56.07 affidavit, as that issue is now moot. *See Collateral Plus, LLC v. MAX Well Med., Inc.*, No. M2010-00638-COA-R3CV, 2011 WL 1167192, at* 7 (Tenn. Ct. App. M.S., Mar. 29, 2011).

Electronic Discovery Costs

CNX challenges the trial court's discretionary decision to shift Miller's electronic discovery costs to it. CNX contends that the trial court erred by shifting Miller's costs after ordering Miller to produce electronic documents. We review this claim under the abuse of discretion standard.

Under the abuse of discretion standard, the appellate court does not substitute its

judgment for that of the trial court. *Eldridge v. Eldridge,* 42 S.W.3d 82, 85 (Tenn. 2001) (citing *Myint v. Allstate Ins. Co.,* 970 S.W.2d 920, 927 (Tenn. 1998)). This court will uphold the trial court's ruling "so long as reasonable minds can disagree as to the propriety of the decision made." *Eldridge*, 42 S.W.3d at 85. An abuse of discretion occurs when the decision of the lower court has no basis in law or fact and is therefore arbitrary, illogical, or unconscionable. *State v. Brown & Williamson Tobacco Corp.*, 18 S.W.3d 186, 191 (Tenn. 2000); *Hooker v. Sundquist*, 107 S.W.3d 532, 535 (Tenn. Ct. App. 2002).

CNX argues the trial court's shifting of Miller's costs is unjustified absent a finding that Miller would suffer undue burden, expense, or hardship. When entering this order, the trial court heard multiple motions, two of which were: Miller's Motion to Quash CNX's Notice of Deposition and CNX's Motion to Compel Miller to Produce Electronic Documents. The trial court held:

> . . .Miller shall produce to CNX in native electronic format, with metadata intact, non-attorney-client privileged and non-attorney work product doctrine-protected documents identified in the October 27, 2008 letter from CNX counsel to Darryl Lowe attached hereto as Exhibit1. To aid in its collection and production of said electronic documents to CNX, Miller's request to hire a computer expert capable of collecting and producing Miller's non-attorney-client privileged and non-attorney work product doctrine-protected electronic documents, with metadata intact is granted. With regard to electronic documents reviewed and collected pursuant to CNX's request, CNX shall pay to Miller its computer expert's fees and out of pocket expenses reasonably incurred in such review and collection at the rate of $180.00 per hour. With regard to electronic documents reviewed and collected pursuant to CNX's requests, CNX shall pay to Miller a reasonable attorney fee by the hour to examine said electronic documents for attorney-client privilege.

In that discovery order, the trial court failed to articulate the reasons for the decision. The court simply stated, "[u]pon consideration of the motions and supporting documentation, and appearance and argument of counsel. . . ."

CNX claims that Miller, as the party opposing the discovery, needed to show specific facts demonstrating why the discovery created an undue burden or hardship. In support of its argument, CNX cites *State ex rel. Flowers v. Tennessee Trucking Ass'n Self Ins. Group Trust*, 209 S.W.3d 602, 615 (Tenn. Ct. App. 2006). In *Flowers*, this court provided an thorough discussion on the role of the trial courts during the discovery stage of litigation. This court observed:

Discovery requests require some tailoring. If parties go too far, the courts may whittle down their discovery requests when the discovery sought "is unduly burdensome or expensive, taking into account the needs of the case, the amount in controversy, limitations on the parties' resources, and the importance of the issues at stake in the litigation." Parties who desire relief from improper or overburdensome discovery are expected to request a protective order under Tenn. R. Civ. P. 26.03. . . . The courts understand that "there is a far greater cost in complying with a discovery request than in making the discovery request. As a result there [can be] a strong temptation to inflict harm on one's adversary by seeking additional information for which the adversary will have to incur the cost." Accordingly, the courts can and should actively discourage overburdensome discovery. . . .

209 S.W.3d at 615 (internal citations omitted).

The record reveals that Miller provided specific facts supporting the trial court's limits on CNX's discovery requests and order that CNX pay for Miller's costs. In Miller's motion, it included the affidavit of Sean Thompson, President of Strategic Technical Resource, which is a company that designs, implements, and maintains small to medium sized business networks. In his affidavit, Mr. Thompson averred, as follows:

11. An authorized representative of SPMB [Stansberry, Petroff, Marcum and Blakley][5] would also need to be present at all times to review all requested data to determine whether a claim of privilege or attorney work product would apply to the data before its disclosure to the reviewing party. . . .

* * *

13. A document by document review of a large population of documents would be time consuming and could consume or require hours, days, even weeks in order to complete the task in a manner intended to avoid unintended disclosure of data of the firm and its clients.

14. To oversee such a task my firm would charge $180.00 per hour, plus out of pocket expenses and costs incurred with regard to the project.

Unlike the party opposing discovery in *Flowers*, Miller did not rely on conclusory statements in opposition to CNX's discovery requests. *See Flowers*, 209 S.W.3d at 618 (vacating the

_____

[5]The firm that represents Miller Petroleum, Inc.

trial court's protective order because the party opposing discovery only relied on conclusory statements of undue burden and hardship). Miller showed and described the undue burden and hardship that CNX's discovery requests created through the affidavit of its IT personnel. Miller demonstrated that the electronic documents requested by CNX created an undue burden because those documents required an additional review to prevent the disclosure of privileged information. The trial court, in its discretion, decided to "tailor" CNX's discovery requests and ordered CNX to assume responsibility for the costs of its request. We find that Miller provided support of its claim that CNX's discovery request created an undue burden and hardship, and as a result, the trial court did not abuse its discretion in shifting the costs to CNX. Accordingly, we affirm.

### Atlas's and Wind City's Challenge to CNX's Appeal

Atlas and Wind City assert that CNX failed to appeal the grant of summary judgment in their respective favors. They claim that CNX failed to properly raise the issue in its brief.

Appellate review typically extends to "those issues presented for review." *Frye v. St. Thomas Health Servs.*, 227 S.W.3d 595, 614 (Tenn. Ct. App. 2007); *see also* Tenn. R. App. P. 13(b). A party waives an issue when he or she fails "to cite to any authority or to construct an argument regarding his position on appeal. . . ." *Newcomb v. Kohler Co.*, 222 S.W.3d 368, 401 (Tenn. Ct. App. 2006). In its appellate brief, CNX challenges the trial court's order granting summary judgment to all parties. CNX argued that the trial court erred in dismissing the claims against Atlas and Wind City after holding Miller did not breach the contract. In the trial court's order, it specifically notes that:

> CNX Gas Company waives its right to file a response in opposition to Wind City's Motion for Summary Judgment without waiving its right to appeal this Order as to Wind City or any other Defendant.

We find this contention lacks merit. Therefore, CNX properly preserved and appealed the grant of summary judgement as it related to Atlas and Wind City.

### Summary Judgment in favor of Wind City

Alternatively, Wind City asserts that if CNX preserved its appeal, the grant of summary judgment was appropriate.[6]

---

[6]At the summary judgment hearing, Wind City made an oral motion for summary judgment after the trial court granted summary judgment to Miller and Atlas. Wind City formally filed a motion for summary (continued...)

The common law and statutory elements for a claim of inducement to breach a contract are identical and include:

(1) a legal contract existed;
(2) defendant was aware of the contract;
(3) defendant intended to induce a breach of that contract;
(4) defendant acted with malice[7];
(5) a breach of contract occurred;
(6) the breach was a proximate result of the defendant's conduct; and
(7) the breach injured the plaintiff.

*Givens v. Mullikin*, 75 S.W.3d 383, 405 (Tenn. 2002) (citations omitted); *see also* Tenn. Code Ann. § 47-50-109 (2001). Because the trial court found that Miller did not breach the contract, it also dismissed CNX's inducement to breach a contract claim against Atlas and Wind City. Specifically, the trial court observed:

Of course, since the Court has found there is no breach of the contract, their puny little efforts during this time didn't amount to anything. Miller did not entertain them.

Having held that the trial court erred in holding that Miller did not breach the contract , it also follows that the court erred in dismissing CNX's claims against Atlas and Wind City for that same reason. The trial court did not address the merits of Wind City's motion for summary judgment, but the court merely applied its holding in favor of Miller and Atlas to Wind City. Wind City offered its argument about "affirmatively negating" elements to CNX's claim for the first time on appeal. It is well settled that issues not raised in the trial court cannot be raised for the first time on appeal. *Barnes v. Barnes*, 193 S.W.3d 495, 501 (Tenn. 2006).

---

[6](...continued)
judgment along with a memorandum in support of its motion on January 22, 2009.

[7]The "ill will" definition of malice for punitive damages does not apply to inducement to breach a contract claims. *Crye-Leike Realtors, Inc. v. WDM, Inc.*, No. 02A01-9711-CH-00287, 1998 WL 651623, at *6 (Tenn. Ct. App. W.S., Sept. 24, 1998). ". . .[I]n the context of a claim for procurement of breach of a contract, 'malice is the 'wilful violation of a known right.'' " *Prime Co. v. Wilkinson & Snowden, Inc.*, No. W2003-00696-COA-R3-CV, 2004 WL 2218574, at *4 (Tenn. Ct. App. W.S., Sept. 30, 2004) (quoting *Crye-Leike Realtors, Inc.,* 1998 WL 651623, at *6).

## V. CONCLUSION

We reverse the trial court's grant of summary judgment in favor of Miller Petroleum, Inc., Atlas America, LLC, and Wind City Oil and Gas, LLC. This cause is remanded, pursuant to applicable law, for further proceedings consistent with this Opinion and the collection of costs. Costs of this appeal are taxed to the appellees, Miller Petroleum, Inc., Atlas America, LLC, and Wind City Oil and Gas, LLC.

_____
JOHN W. McCLARTY, JUDGE